

Richard L. Seabolt (SBN 67469)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:    RLSeabolt@DuaneMorris.com

Attorneys for Non-Party
CISCO SYSTEMS, INC.

ORIGINAL
FILED

AUG 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

JW

COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH
ORGANISATION,

                          Plaintiff,

        v.

TOSHIBA AMERICA INFORMATION
SYSTEMS, INC., et al.,

                          Defendants.

CV 08 80151 MISC

Case No. _____

Subpoenas issued in the matters styled:

  *CSIRO v. Buffalo Technology (USA), Inc., et al.*, U.S.D.C. Eastern District of Texas, Civil Action No. 2:05-CV-053-LED

  *Microsoft Corporation, et al. v. CSIRO*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-549-LED;

  *CSIRO v. Toshiba America, et al.*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-550-LED; and

  *Intel Corporation et al v. CSIRO*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-551-LED

**NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER**

Date:          September 19, 2008
Time:          9:00 a.m.
Courtroom:  6, Fourth Floor

Judge:        Ronald M. Whyte

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

        NOTICE IS HEREBY GIVEN THAT ON September 19, 2008 at 9:00 a.m., or as soon

thereafter as counsel may be heard by the above-entitled Court, non-party Cisco Systems, Inc.

1

("Cisco") will, and hereby does, move the Court for the entry of an order to protect Cisco's confidential documents, information, and testimony from disclosure to Commonwealth Scientific and Industrial Research Organisation's ("CSIRO") in-house counsel and consultants who are competitive decision-makers with respect to CSIRO's patent prosecution and patent licensing activities. Defendants in the underlying lawsuits consent to the entry of the proposed order, but despite extensive negotiations, CSIRO refuses to consent to the requested relief. In particular, Cisco and CSIRO could not reach an agreement about whether Cisco was required to make a blanket disclosure of its confidential information to Dennis Redfern (a CSIRO consultant who is in charge of CSIRO's patent licensing negotiations with third parties, including Cisco) and whether Cisco was required to disclose all of its confidential information, except purely technical documents, to Terry Healy (CSIRO's special counsel who is involved in CSIRO's patent prosecution and licensing negotiations with third parties, including Cisco). Otherwise, CSIRO has agreed to the form of the proposed Confidentiality Order and Addendum attached hereto as Exhibit A. (*See* Declaration of Matthew Yungwirth ("Yungwirth Decl.") at ¶¶ 13, 16-17).

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Matthew Yungwirth filed herewith and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: August 5, 2008

DUANE MORRIS LLP

Richard L. Seabolt
Attorneys for Non-Party
CISCO SYSTEMS, INC.

# TABLE OF CONTENTS

I.    INTRODUCTION AND MATERIAL FACTS ............................................................. 4

    A.    Background ...................................................................................................... 4

    B.    Cisco's Discovery Efforts .............................................................................. 5

    C.    CSIRO's Disclosure Demands Regarding Cisco's Confidential
        Information ....................................................................................................... 7

II.   DISCUSSION ............................................................................................................ 9

    A.    The Protective Order Proposed By Cisco Is Reasonable And Necessary To
        Protect Cisco's Confidential Information ...................................................... 9

    B.    Cisco's Highly Confidential Information Should Be Protected from
        Disclosure to CSIRO's Competitive Decision-Makers ............................... 10

III.  CONCLUSION ........................................................................................................ 14

CERTIFICATE OF CONFERENCE ................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. Elanex Pharms., Inc.*
  160 F.R.D. 134 (W.D. Wash. 1994)...................................................................13

*Beinin v. Center for the Study of Popular Culture*
  No. C 06-2298, 2007 WL 832962 (N.D. Cal. March 16, 2007) ...........................11

*Blackburn v. United States*
  100 F.3d 1426 (9th Cir. 1996)...........................................................................10

*Brown Bag Software v. Symantec Corp.*
  960 F.2d 1465 (9th Cir. 1992)........................................................................11-12

*Cook v. Yellow Freight System, Inc.*
  132 F.R.D. 548 (E.D. Cal. 1990)..........................................................................4

*Intel Corp. v. Via Techs., Inc.*
  198 F.R.D. 525 (N.D. Cal. 2000) ........................................................................13

*Intervet, Inc. v. Merial, Ltd.*
  241 F.R.D. 55 (D.D.C. March 21, 2007)...............................................................14

*Nazomi Commc'ns, Inc. v. Arm Holdings PLC*
  No. C 02-02521, 2002 WL 32831822 (N.D. Cal. Oct. 11, 2002) ..........................11

*Phillip M. Adams & Assocs. v. Dell, Inc.*
  2006 WL 4523602 (D. Utah June 12, 2006) ........................................................13

*Rivera v. Nibco, Inc.*
  384 F.3d 822 (9th Cir. 2004)..............................................................................10

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*
  682 F. Supp. 20 (D. Del. 1988) ..........................................................................13

*Trunk v. City of San Diego*
  Civil Action Nos. 06-cv-1597 and 06-cv-1728, 2007 WL 3001679, at *5 (S.D. Cal.
  Oct. 11, 2007)...................................................................................................11

*U.S. Steel Corporation v. United States*
  730 F.2d 1465 (Fed. Cir. 1984)..........................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 26 .......................................................................................... 10-11

Federal Rule of Evidence 408 ................................................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION AND MATERIAL FACTS**

    **A.    Background**

    Over the past two years, Cisco has been served with a series of non-party subpoenas issued out of this Court in connection with several related lawsuits pending in the Eastern District of Texas that include Civil Action Nos. 2:05-CV-053-LED; 6:06-CV-549-LED; 6:06-CV-550-LED; and 6:06-CV-551-LED (collectively the "CSIRO Actions"). (Yungwirth Decl. at ¶ 2, Exh. 1). The CSIRO Actions involve CSIRO's claims for infringement of U.S. Patent No. 5,487,069 (the "'069 Patent") that is alleged to cover wireless local area network ("wireless LAN") technology.

    Although Cisco is not a party to any of the CSIRO Actions, it has been the subject of extensive third-party discovery, in large part, because it is a party to a 1998 Technology License Agreement (the "TLA"). Pursuant to the TLA, Cisco has a license to the '069 Patent. (Yungwirth Decl. at ¶ 3, Exh. 2). The TLA originally was entered by CSIRO and Radiata Communications Pty, LTD. ("Radiata"). (*Id.*). Radiata was a company founded by some of the engineers who worked on the research and development that led to the '069 Patent. When Cisco acquired Radiata in February of 2001, it stepped into the shoes of Radiata and became a licensee to the '069 Patent. The scope of the TLA and Cisco's acquisition of Radiata has become a subject of debate in the CSIRO Actions. Accordingly, both CSIRO and the Defendants have sought information regarding the TLA, Cisco's acquisition of Radiata, the development of Cisco's products, and a number of other subject matters that are significantly less relevant to the issues in the CSIRO Actions.

    Likewise, CSIRO has sought some of the same information regarding the TLA, Cisco's acquisition of Radiata, and the development of Cisco's products in separate settlement negotiations between Cisco and CSIRO regarding their disputes related to the TLA.[1] (*Id.* at ¶¶ 4-

---

[1] The negotiations between Cisco and CSIRO have been undertaken subject to Fed. R. Evid. 408. Accordingly, the negotiations are subject to the settlement privilege and have not been disclosed in detail to the Defendants in the CSIRO Actions. *See, e.g., Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990).

5). Those negotiations have been on-going for several years and CSIRO's primary in-house representative in those negotiations has been Denis Redfern. In fact, Mr. Redfern has attended every in-person negotiation meeting in which CSIRO's in-house representatives have participated.

In connection with those negotiations, Mr. Redfern and CSIRO's outside counsel have requested that Cisco provide certain information regarding the TLA and Cisco's understanding of the TLA for the purpose of considering Cisco's positions in the negotiations. Although Cisco has generally cooperated with CSIRO with the hopes of reaching a negotiated resolution of their dispute, Cisco has not been willing to disclose to CSIRO every piece of information requested in connection with those negotiations. And with respect to the information Cisco has agreed to provide, Cisco agreed to provide some of it on an outside counsel's eyes only basis. Some of that same information is the subject of the discovery in the CSIRO Actions, including both the document subpoenas and depositions of Cisco's current and former employees. (*Id.*).

## B. Cisco's Discovery Efforts

Cisco has been forced to undertake extraordinary efforts at great expense to respond to third-party discovery in the CSIRO Actions. For example, in response to the series of document subpoenas, Cisco has engaged in a rolling production of more than 20,000 pages of documents at an expense of over $100,000, yet counsel for CSIRO continues to press Cisco for more and more documents. (*Id.* at ¶ 6). Likewise, Cisco has been forced to protect the confidentiality of its information at numerous depositions of its current and former employees taken in California, Ohio, and Sydney, Australia; and additional depositions of Cisco's ex-employees are on the near horizon.

Furthermore, Cisco has had to deal with CSIRO's unreasonable demands regarding the disclosure of Cisco's highly confidential information that is responsive to the subpoenas and that is the subject of this motion. Among the documents that could fall within the forty-one overlapping categories of documents sought by the three most recent document subpoenas are documents related to: (a) confidential negotiations between Cisco and Radiata regarding Cisco's acquisition of Radiata and Cisco's internal due diligence related to the acquisition; (b)

communications between Cisco and third parties regarding the manufacturing of Cisco products; (c) Cisco's internal documents discussing the success and/or failure of its product lines; (d) Cisco's strategic business plans regarding the justification for its acquisition of certain companies and its offering of products in the wireless LAN market; (e) certain computer source code; (f) Cisco's licenses and agreements with third parties related to research and development, manufacturing, and related financial transactions; and (g) technical documents regarding the development of certain Cisco products. (Yungwirth Decl. at ¶ 2, Exh. 1). Most of these same subject matters have been the subject of deposition testimony provided by Cisco's current and former employees on multiple occasions. (*Id.* at ¶ 9).

Although Cisco has questioned the relevance of much of the information sought to be obtained through the subpoenas, it agreed to produce its confidential documents and its current and former employees' deposition testimony subject to the proper protections outlined in a letter agreement between itself and the parties in the CSIRO Actions, dated January 25, 2008 (the "Letter Agreement").[2] (Yungwirth Decl. at ¶ 7, Exh. 4). According to the Letter Agreement, Cisco is entitled to designate its confidential documents as "confidential," "attorney's eyes only," or "outside counsel's eyes only," depending on the level of confidentiality. (*Id.*). Per the Letter Agreement, the parties agreed that information designated as "outside counsel's eyes only" would not be disclosed to in-house attorneys or consultants for the parties. (*Id.*). And, if a party believes that Cisco has improperly designated particular information, the Letter Agreement provides that the party must identify the information so that Cisco can either re-designate or move for a protective order to enforce its original designation. (*Id.*). As of the filing of this motion, no party has identified any particular information that it believes is improperly designated by Cisco. (*Id.* at ¶ 10).

During the several months following the entry of the Letter Agreement, Cisco received two new document subpoenas and three deposition subpoenas in connection with the CSIRO

---

[2] The Letter Agreement was based on a similarly worded agreement related to the confidential deposition testimony of an ex-Cisco employee who was deposed in Sydney, Australia in October 2007. (*Id.* at ¶ 8, Exh. 5). Similar agreements have been reached with respect to the remaining depositions. (*Id.*).

1   Actions. (Yungwirth Decl. at ¶¶ 2, Exh. 1; 9). In response to each of those subpoenas, non-party

2   Cisco offered to produce documents or make available its current or former employees on the

3   condition that it was entitled to designate documents or deposition testimony according to the

4   same terms as the Letter Agreement. (*Id.* at ¶¶ 7-8). The parties in the CSIRO Actions implicitly

5   accepted Cisco's offer and Cisco produced additional documents and provided its witnesses for

6   additional depositions in California and Ohio. (*Id.* at ¶¶ 6, 9). Cisco's document production has

7   been made on a rolling basis with productions on each of February 11 and 22, March 5, May 19,

8   June 26, July 11 and August 1, 2008. (*Id.* at ¶ 6, Exh. 3).

9           C.    **CSIRO's Disclosure Demands Regarding Cisco's Confidential Information**

10          On June 6, 2008, after Cisco's <u>fourth</u> rolling document production, CSIRO announced for

11   the first time that it believed the Letter Agreement applied only to Cisco's first document

12   production and, therefore, claimed that Cisco's documents were improperly designated as

13   "outside counsel's eyes only" in each of its second, third, and fourth document productions. (*Id.*

14   at ¶ 11, Exh. 6). Furthermore, CSIRO suggested that it would treat the documents as having

15   been designated as "attorney's eyes only" according to the terms of the Agreed Protective Order

16   entered in the CSIRO Actions, to which Cisco is not a party, unless Cisco filed a motion for a

17   protective order. The motivation behind CSIRO's position is its desire to disclose Cisco's

18   outside counsel's eyes only designated information to Mr. Terry Healy and Mr. Denis Redfern,

19   who are CSIRO's in-house counsel and patent licensing consultant, respectively. (*Id.* at ¶ 13).

20          In response, Cisco confirmed that each of the named defendants in the CSIRO Actions

21   agreed with Cisco that the Letter Agreement covered all of Cisco's confidential information and

22   that they would agree to a protective order along the lines of the Letter Agreement, if necessary.

23   (Yungwirth Decl. at ¶ 12, Exh. 7). Cisco also negotiated with CSIRO to reach a compromise

24   agreement regarding the form of a protective order to be entered by this Court because CSIRO

25   would not agree to comply with the Letter Agreement. Throughout those negotiations, CSIRO

26   refused to identify any specific documents that it believed were improperly designated and

27   instead argued in conclusory fashion that it should be entitled to show all of Cisco's documents

28   that were not purely technical in nature to Messrs. Healy and Redfern. CSIRO also refused to

provide a specific explanation as to why it needed to make essentially a blanket disclosure of Cisco's documents to Messrs. Healy and Redfern and instead repeated that they were in charge of the litigation and, therefore, needed access to Cisco's confidential documents.

Because Messrs. Healy and Redfern are competitive decision-makers involved in CSIRO's business outside the context of this litigation, Cisco could not agree to the blanket disclosure proposed by CSIRO. First, Terry Healy is special counsel to CSIRO. According to CSIRO's counsel, Mr. Healy's job responsibilities include, among other things, (a) the prosecution of foreign counterparts to the '069 Patent; and (b) licensing of the '069 Patent outside of the context of the CSIRO Actions, including with respect to licensing negotiations between Cisco and CSIRO. (Yungwirth Decl. at ¶ 14). Second, Mr. Redfern is a non-lawyer employee of WLAN Proprietary Services, Ltd., a subsidiary of CSIRO that is responsible for licensing the '069 Patent. In other words, Mr. Redfern's sole job responsibility for CSIRO is licensing the '069 Patent that is the subject of the CSIRO Actions, including with respect to the licensing negotiations between Cisco and CSIRO. (*Id.*). As discussed above, Mr. Redfern has been extensively involved on the negotiations between Cisco and CSIRO. In light of the impossibility of Messrs. Redfern and Healy being able to compartmentalize Cisco's highly confidential information for use in the CSIRO Actions, but not patent prosecution and/or patent licensing outside the scope of the CSIRO Actions, Cisco is not willing to disclose its most confidential information to those individuals, as demanded by CSIRO.

CSIRO's proposed disclosure of Cisco's highly confidential information to CSIRO's competitive decision-makers, who are handling licensing negotiations with Cisco and the prosecution of foreign counterparts to the '069 Patent, would unfairly prejudice and harm Cisco. Accordingly, Cisco seeks an order that precludes the individuals who may receive its most confidential documents from being involved in: (a) wireless LAN patent licensing negotiations outside the scope of the CSIRO Actions, and (b) patent prosecution in the wireless LAN field. Although Cisco and CSIRO have reached an agreement regarding a majority of the proposed Confidentiality Order and Addendum, attached hereto as Exhibit A, they continue to dispute

1 §4.3 and Exhibit B to the proposed order, both of which relate to the limits of disclosure of

2 Cisco's outside counsel's eyes only information.[3]

3 **II.    DISCUSSION**

4      **A.    The Protective Order Proposed By Cisco Is Reasonable And Necessary To
           Protect Cisco's Confidential Information**

5

6      Cisco's proposed protective order, attached hereto as Exhibit A, is carefully crafted to

7 give the parties as much access as reasonable to Cisco's confidential information, while at the

8 same time protecting Cisco's information from inadvertent or unintended use by the parties'

9 representatives outside the scope of the CSIRO Actions.  In particular, Cisco proposes three

10 levels of confidentiality: "confidential," "attorneys' eyes only," and "outside counsel's eyes

11 only."  The disagreement between Cisco and CSIRO is whether the "outside counsel's eyes only"

12 designation is necessary.

13      On the one hand, CSIRO contends that its in-house counsel should be entitled to see all of

14 Cisco's confidential documents, regardless of the designation, except a small subset of technical

15 documents that it concedes should not be shown to Mr. Healy based on his involvement with

16 CSIRO's patent prosecution.  (Yungwirth Decl. at ¶ 13; 17, Exh. 9).  Cisco, on the other hand,

17 has offered to make its outside counsel's documents available to a CSIRO in-house counsel and

18 consultant, but only if they are not involved in competitive decision-making in the wireless LAN

19 field.[4]  In particular, Cisco offered to make its "outside counsel's eyes only" information

20 available to Messrs. Healy and Redfern if they discontinue their involvement in patent

21 prosecution in the wireless LAN field and patent licensing activities except with respect to the

22 Defendants in the CSIRO Actions.  (*Id.* at ¶ 16).  Alternatively, Cisco offered to make its

23 "outside counsel's eyes only" designated information available to other CSIRO counsel and

24
[3] The general form of the proposed Confidentiality Order and Addendum is along the lines of the Agreed Protective

25 Order entered in the CSIRO Actions.  Cisco agreed to that format so that it would be easier for the parties in the
CSIRO Actions to keep track of their obligations under the proposed confidentiality order.  (Yungwirth Decl. at ¶

26 15).

27 [4] The Defendants in the CSIRO Actions have agreed that "outside counsel's eyes only" designated information need
not be shown to their in-house counsel.  (*Id.* at ¶ 12, Exh. 7).

28

1  consultants who confirmed that they were not involved in competitive decision-making,

2  including at least patent prosecution and patent licensing in the wireless LAN field. (*Id.*). As a

3  third option, Cisco offered to consider whether individual documents, to be identified by CSIRO

4  on a document-by-document basis, could be disclosed to Messrs. Healy and Redfern.[5] (*Id.*).

5  In response, CSIRO rejected Cisco's offers and demanded the right to make a blanket

6  disclosure to Messrs. Healy and Redfern (with a limited technical document exception) and

7  refused to agree to anything less. CSIRO contends that all of Cisco's documents are relevant to

8  the litigation and, therefore, claims that CSIRO's outside counsel needs to show all of Cisco's

9  non-technical documents to CSIRO's in-house counsel. (*Id.* at ¶¶ 13; 17, Exh. 9). CSIRO's

10 outside counsel has acknowledged, however, that he has not even reviewed all of the documents

11 designated by Cisco as "outside counsel's eyes only." (*Id.* at ¶ 18). Thus, CSIRO is taking this

12 hard line position in a vacuum without providing any specific justification for allowing

13 competitive decision-makers at CSIRO to see confidential information that will give them an

14 unfair competitive advantage in matters outside the litigation, including Cisco's licensing

15 negotiations with CSIRO related to the '069 Patent.

16 **B.    Cisco's Highly Confidential Information Should Be Protected from
        Disclosure to CSIRO's Competitive Decision-Makers.**

17

18 Although the Federal Rules of Civil Procedure favor full discovery whenever possible,

19 district courts are given wide discretion in setting the limits of discovery. *Blackburn v. United*

20 *States*, 100 F.3d 1426, 1436 (9th Cir. 1996). Rule 26(c)(1) provides that a district court "may,

21 for good cause, issue an order to protect a party or person from annoyance, embarrassment,

22 oppression, or undue burden or expense" and authorizes courts to minimize the burden on a

23 producing party by ordering that "a trade secret or other confidential research, development, or

24 commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P.

25 26(c)(1)(G). "'Good cause' is established where it is specifically demonstrated that disclosure

26 ─────────────────────────
   [5] During the course of the extended negotiations, Cisco offered a number of other proposals that limited the
27 disclosure to certain categories of documents, but all of those proposals were likewise rejected by CSIRO. (*Id.* at ¶¶
   16-17).

28

1  will cause a 'specific prejudice or harm.'" *Rivera v. Nibco, Inc.*, 384 F.3d 822, 827 (9th Cir.

2  2004).

3      The Federal Rules of Civil Procedure afford non-parties even greater protection against

4  undue burdens related to complying with subpoenas. *Beinin v. Center for the Study of Popular*

5  *Culture*, No. C 06-2298, 2007 WL 832962, *2, *5 (N.D. Cal. March 16, 2007) (denying motion

6  to compel where compliance "would inflict costs and burdens disproportionate to whatever

7  minimal evidentiary value the documents might have"). "Courts balance the need for discovery

8  against the burden imposed on the person from whom documents are sought, and the status of the

9  person as a nonparty is a factor that weighs against disclosure." *Id.* at *5. *See also Trunk v. City*

10  *of San Diego*, Civil Action Nos. 06-cv-1597 and 06-cv-1728, 2007 WL 3001679, at *5 (S.D. Cal.

11  Oct. 11, 2007) ("As a non- party, LiMandri is entitled to broader protection under Rule 26(c).").

12      In the Ninth Circuit, the seminal case governing the disclosure of confidential information

13  to in-house counsel under a protective order is *Brown Bag Software v. Symantec Corp.*, 960 F.2d

14  1465 (9th Cir. 1992). In *Brown Bag*, the Ninth Circuit adopted the analysis set forth in *U.S. Steel*

15  *Corporation v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), requiring a district court to

16  examine factually all the risks and safeguards surrounding inadvertent disclosure or use by

17  competitive decision-makers. *Id.* at 1470-71. The crucial factor in the analysis is whether

18  counsel (or in this case, counsel and a consultant) is involved in "competitive decision-making."

19  (*Id.*). When examining the risk of inadvertent disclosure, a court must consider "not only

20  whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel

21  could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he

22  had read the documents." *Id.* at 1471. *See also Nazomi Commc'ns, Inc. v. Arm Holdings PLC*,

23  No. C 02-02521, 2002 WL 32831822, at *2 (N.D. Cal. Oct. 11, 2002) ("In certain circumstances,

24  the designation 'Attorneys Eyes Only' does not provide sufficient protection for a party

25  responding to a discovery request that seeks confidential information. When opposing counsel is

26  involved in the competitive decision-making of its client, a party responding to a discovery

27  request may rightfully question whether that attorney should be denied access to confidential

28  documents.").

11

1    The circumstances of this case are at least one step removed from the circumstances in

2  *Brown Bag* and favor the entry of the proposed confidentiality order because Cisco is not a party

3  to the CSIRO Actions, and moreover, it is not resisting disclosure to all in-house counsel for

4  CSIRO.  Rather, Cisco is only challenging CSIRO's demand that Cisco's highly confidential

5  information be disclosed to the two competitive decision-makers in charge of CSIRO's patent

6  prosecution and patent licensing efforts.    It is clear that Messrs. Redfern and Healy are

7  competitive decision-makers for CSIRO, including with respect to patent licensing and/or

8  prosecution in the wireless LAN field.  Mr. Healy is involved in the prosecution of patents in

9  wireless LAN field, including patents that are related to the '069 Patent at issue in the CSIRO

10  Actions.

11    More importantly, Messrs. Healy and Redfern are involved in confidential negotiations

12  and settlement discussions between Cisco and CSIRO regarding their disputes arising out of the

13  TLA.  In fact, Mr. Redfern appears to be the chief '069 Patent licensing negotiator for CSIRO,

14  including in its negotiations with Cisco.  During the course of the negotiations, CSIRO requested

15  that Cisco produce some of the same documents that CSIRO now seeks in response to its non-

16  party subpoenas to Cisco in the CSIRO Actions.  In other words, many of the same documents

17  and much of the information that CSIRO seeks to disclose to Messrs. Healy and Redfern in

18  connection with the CSIRO Actions are also at issue in the separate licensing negotiations

19  between Cisco and CSIRO.  And although Cisco has agreed to turn over to CSIRO certain

20  confidential information in the licensing negotiations, some of which on an outside counsel's

21  eyes only basis, CSIRO's primary licensing negotiators (Messrs. Redfern and Healy) should not

22  be given full and unfettered access to Cisco's confidential information under the guise of their

23  alleged need to review all documents that are responsive to the subpoenas issues in the CSIRO

24  Actions.  It would be unfair and prejudicial to Cisco to allow CSIRO to enlighten its licensing

25  negotiators through discovery in the CSIRO Actions, whether such enlightenment is intentional

26  or not.

27    Moreover, CSIRO has never explained to Cisco why its outside counsel cannot manage

28  the litigation without sharing Cisco's confidential information with Messrs. Healy and Redfern,

12

1    as opposed to other in-house counsel at CSIRO. "The party seeking access [in this case CSIRO]

2    must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage

3    outside litigation counsel." *Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000)

4    (denying in-house counsel access to defendant's confidential information). It is not enough for

5    CSIRO to maintain in conclusory fashion that Messrs. Healy and Redfern must be involved in all

6    matters relating to this litigation. "Requiring a party to rely on its competent outside counsel

7    does not create an 'undue and unnecessary burden.'" *Id.* Furthermore, "a party's opportunity to

8    develop its case through alternative discovery procedures factors into decisions on the propriety

9    of such protective orders." *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134, 138 (W.D.

10   Wash. 1994) (allowing in-house counsel access to confidential information where attorneys were

11   not involved in making competitive decisions and had acted under protective orders in similar

12   litigation). In the instant case, non-party Cisco has provided several reasonable compromises

13   that would allow CSIRO access to Cisco's confidential information under certain conditions, and

14   would provide outside counsel full access to Cisco's confidential material. Any prejudice to

15   CSIRO in this matter is a product of its own making because it refuses to segregate its

16   competitive decision-makers from the management of the CSIRO Actions.

17       Also, CSIRO's argument during the negotiations that Cisco is not entitled to an outside

18   counsel's eyes only designation because it is not a competitor of Cisco is a red herring. CSIRO's

19   argument ignores the fact that Messrs. Healy and Redfern can be competitive decision-makers,

20   even if Cisco and CSIRO do not compete in the marketplace. For purposes of the competitive

21   decision-maker analysis, courts have regularly held that marketplace competition is not the only

22   form of competitive activities to be considered. *See, e.g., Phillip M. Adams & Assocs. v. Dell,*

23   *Inc.*, 2006 WL 4523602, at *4 (D. Utah June 12, 2006) (citing from defendant's memorandum:

24   "[A]lthough neither Dr. Adams nor his company manufacture or sell computers, he is

25   undoubtedly a competitor in the area of development and exploitation of computer-related

26   technologies."); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20,

27   21 (D. Del. 1988) (finding that plaintiff's president could not view defendant's confidential

28   information because "Its concern is clear: Mr. Greene might (whether consciously or

13

1  subconsciously) abuse the confidential scientific information revealed to Sundstrand's

2  competitive disadvantage. The potential for abuse is real."); *cf. Intervet, Inc. v. Merial, Ltd.*, 241

3  F.R.D. 55 (D.D.C. March 21, 2007) (finding that in-house attorney, who was not involved in

4  patent licensing or prosecution, was not a competitive decision-maker but requiring that the

5  attorney "recuse himself or herself from any situation where use of the information in, for

6  example, the prosecution of other patents or licensing decisions, might be a violation of the

7  Order"). Here, the subject confidential information is competitively sensitive in the context of

8  CSIRO's business -- namely developing, patenting, and licensing technology -- and its activities

9  vis-à-vis Cisco, including on-going licensing negotiations and patent prosecution regarding the

10  '069 Patent.

11  **III.    CONCLUSION**

12      For the foregoing reasons, non-party Cisco respectfully requests that this Court grant its

13  motion and enter the proposed Confidentiality Order and Addendum, attached hereto as Exhibit

14  A, that precludes the disclosure of Cisco's most confidential information to individuals who are

15  involved in CSIRO's patent prosecution and licensing in the wireless LAN field outside the

16  context of the CSIRO Actions.

17                                    Respectfully submitted,

18                                    DUANE MORRIS LLP

19  Dated: August **5**, 208

20                                    By:  Richard L. Seabolt
                                          Attorneys for Nonparty
21                                        CISCO SYSTEMS, INC.

22  Of Counsel:

23  L. Norwood Jameson
         (e-mail: wjameson@duanemorris.com)
24  Matthew S. Yungwirth
         (email: msyungwirth@duanemorris.com)
25  DUANE MORRIS, LLP
    1180 West Peachtree St., Ste 700
26  Atlanta, GA 30309
    t: (404) 253-6900
27  f: (404) 253-6901

28

## CERTIFICATE OF CONFERENCE

I certify that counsel for movant Cisco Systems, Inc. ("Cisco"), the Defendants in the underlying actions, and respondent Commonwealth Scientific and Industrial Research Organisation ("CSIRO") have conferred by telephone on several occasions and by email in an effort to reach a resolution of the relief sought by this motion. Cisco and the Defendants reached an agreement regarding the terms of the proposed Confidentiality Order and Addendum and the Defendants have consented to the entry of the proposed Confidentiality Order and Addendum. Cisco and CSIRO reached agreement with respect to all aspects of the proposed Confidentiality Order and Addendum, except paragraph 4.3 and Exhibit B to the proposed Confidentiality Order and Addendum. CSIRO opposes the limitations proposed by Cisco on the disclosure of Cisco's outside counsel's eyes only designated information.

Respectfully Submitted,

Dated: August **5**, 2008

DUANE MORRIS LLP

Richard L. Seabolt
Attorneys for Non-Party
CISCO SYSTEMS, INC.

**PROOF OF SERVICE**

Commonwealth Scientific And Industrial Research Organisation v. Toshiba America Information Systems, Inc.

United States District Court, Northern District of California

     I am a citizen of the United States, over the age of 18 years, and not a party to interested in the cause.  I am an employee of Duane Morris LLP and my business address is One Market, Spear Tower, Suite 2000, San Francisco, California 94105.  I am readily familiar with this firm's practices for collecting and processing correspondence for mailing with the United States Postal Service and for transmitting documents by FedEx, fax, email, messenger and other modes.  On the date stated below, I served the following documents:

**NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER;**

**CISCO SYSTEMS, INC.'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL PURSUANT TO LOCAL RULE 79-5**

**DECLARATION OF  MATTHEW S. YUNGWIRTH IN SUPPORT OF MOTION FOR CONFIDENTIALITY ORDER;**

**DECLARATION OF RICHARD L. SEABOLT IN SUPPORT OF MOTION FOR CONFIDENTIALITY ORDER;**

**CIVIL COVERSHEET**

| DEFENDANT | ATTORNEY CONTACT INFORMATION |
|---|---|
| ASUS Computer International | Patrick D. Benedicto<br>Okamota & Benedicto<br>1737 N First Street<br>Suite 270<br>San Jose, CA 95112<br>Tel:  408-436-2110<br>patrick@obllp.com |
| Commonwealth Scientific and Industrial Research Organization (CSIRO) | Keith K. Fong<br>Michael K. Ng<br>**Kerr & Wagstaffe LLP**<br>100 Spear Street<br>Suite 1800<br>San Francisco, CA 94105<br>Tel:  415-371-8500<br>fong@kerrwagstaffe.com<br>mng@kerrwagstaffe.com<br><br>Daniel J. Furniss<br>Julie J. Han<br>Jordan Trent Jones<br>John E. Lord<br>Gary H. Ritchey<br>Robert Davis Tadlock<br>**Townsend & Townsend & Crew**<br>379 Lytton Ave |

16

| | | |
|---|---|---|
| 1 | | Palo Alto, CA 94301 |
| | | Tel: 650-326-2400 |
| 2 | | djfurniss@townsend.com |
| | | jjhan@townsend.com |
| | | jtjones@townsend.com |
| 3 | | jelord@townsend.com |
| | | ghritchey@townsend.com |
| 4 | | rdtadlock@townsend.com |
| 5 | | |
| | | D. Stuart Bartow |
| 6 | | Thomas F. Fitzpatrick |
| | | Goodwin Procter LLP |
| 7 | | 181 Lytton Ave |
| | | Palo Alto, CA 94301 |
| 8 | | Tel: 650-752-3100 |
| | | sbartow@goodwinprocter.com |
| 9 | | tfitzpatrick@goodwinprocter.com |
| 10 | | |
| | | Gregory Scott Bishop |
| 11 | | Byron Willie Cooper |
| | | Goodwin Procter LLP |
| | | 135 Commonwealth Drive |
| 12 | | Menlo Park, CA 94025 |
| | | Tel: 650-752-3100 |
| 13 | | gbishop@goodwinprocter.com |
| | | bcooper@goodwinprocter.com |
| 14 | | |
| 15 | 3 Com Corporation | Craig E. Davis |
| | | Jeffrey T. Lindgren |
| | Accton Technology Corporation | Avin Sharma |
| 16 | | Stephen C. Steinberg |
| | SMC Networks, Inc. | Richard C. Vasquez |
| 17 | | Vasquez Benisek & Lindgren, LLP |
| | D-Link Systems | 3685 Mt. Diablo Blvd #300 |
| 18 | | Lafayette, CA 94549 |
| | | Tel: 925-627-4250 |
| 19 | | cdavis@vbllaw.com |
| | | jlindgren@vbllaw.com |
| 20 | | asharma@vbllaw.com |
| | | ssteinberg@vbllaw.com |
| 21 | | rvasquez@vbllaw.com |
| 22 | Belkin Corporation | Brian Berliner |
| | | Nicholas J. Whilt |
| 23 | | Ryan K. Yagura |
| | | O'Melveny & Myers |
| 24 | | 400 South Hope Street |
| | | Los Angeles, CA 90071 |
| 25 | | 213-430-7503 |
| | | bberliner@omm.com |
| 26 | | nwhilt@omm.com |
| | | ryagura@omm.com |
| 27 | | |
| | | Kristopher Dawes |
| 28 | | O'Melveny & Myers LLP |

17

NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER

| | |
|---|---|
| | 610 Newport Center Drive<br>17th Floor<br>Newport Beach, CA 92660<br>949-823-6921<br>kdawes@omm.com<br><br>Mark C. Scarsi<br>Milbank Tweed Hadley & McCloy<br>601 South Figueroa Street<br>30th Floor<br>Los Angeles, CA 90017<br>Tel: 213-892-4580<br>mscarsi@milbank.com |
| Nintendo of America, Inc. | Matthew J. Brigham<br>Thomas J. Friel, Jr.<br>Lowell D. Mead<br>Timothy S. Teter<br>Cooley Godward Kronish LLP<br>Five Palo Square<br>3000 El Camino Real<br>Palo Alto, CA 94306-2155<br>650-843-5677<br>mbrigham@cooley.com<br>tfriel@cooley.com<br>meadld@cooley.com<br>teterts@cooley.com<br><br>Robert W. Faris<br>John R. Lastova<br>Nixon & Vanderhye PC<br>901 N Glebe Road<br>11th Floor<br>Arlington, VA 22203<br>Tel: 703-816-4000<br>rwf@nixonvan.com<br>jrl@nixonvan.com |
| Fujitsu Computer Systems Corporation | Christopher Frederick Jeu<br>Karl J. Kramer<br>Marc J. Pernick<br>Morrison & Foerster<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: 650-813-5728<br>cjeu@mofo.com<br>kkramer@mofo.com<br>mpernick@mofo.com |
| Toshiba America Information Systems, Inc. | Irfan A. Lateef<br>Reza Mirzaie<br>Craig S. Summers<br>Knobble Martens Olson & Bear LLP<br>2040 Main Street<br>Fourteenth Floor<br>Irvine, CA 92614 |

18

NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER

| | |
|---|---|
| | Tel: 949-760-0404<br>2ial@kmob.com<br>reza.mirzaie@kmob.com<br>craig.summers@kmob.com |
| D-Link Systems, Inc. | Christine Yang<br>Law Offices of S.J. Christine Yang<br>17220 Newhope Street<br>Suite 101-102<br>Fountain Valley, CA 92708<br>Tel: 714-641-4022<br>cyang@sjclawpc.com<br><br>Duncan Palmatier<br>Attorney At Law<br>530 S Asbury Street<br>Suite 5<br>Moscow, ID 83843<br>208-892-2962<br>dpalm@dpalmlaw.com |
| Buffalo, Inc.<br><br>Buffalo Technology (USA), Inc. | Richard J. Codding<br>Joanna H. Kim<br>Justin A Radell<br>Akin Gump Strauss Hauer & Feld LLP<br>2029 Century Park East<br>Suite 2400<br>Los Angeles, CA 90067<br>Tel: 310-229-1045<br>rcodding@akingump.com<br>jkim@akingump.com<br>jradell@akingump.com |
| Marvell Asia Pte Ltd<br><br>Marvell Intl Ltd<br><br>Marvell Semiconductor | Marc Ackerman<br>White & Case<br>1155 Avenue of the Americas<br>New York, NY 10036<br>Tel: 212-819-8200<br>mackerman@whitecase.com<br><br>Warren S. Heit<br>Taryn Lam<br>White & Case LLP<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306<br>Tel: 650-213-0300<br>wheit@whitecase.com<br>tlam@whitecase.com |
| Intel Corporation | Christa M. Anderson<br>Ryan M. Kent<br>Ajay B. Kundaria<br>Leo L. Lam<br>Robert Adam Lauridsen<br>Robert A Van Nest |

19

| | |
|---|---|
| | **Keker & Van Nest**<br>710 Sansome St.<br>San Francisco, CA 94111<br>Tel: 415-391-5400<br>canderson@kvn.com<br>rkent@kvn.com<br>akundaria@kvn.com<br>llam@kvn.com<br>alauridsen@kvn.com<br>rvannest@kvn.com<br><br>Steven S. Baik<br>Christopher R. Ottenweller<br>Sugithra Somasekar<br>Orrick Herrington & Sutcliffe<br>1000 Marsh Rd<br>Menlo Park, CA 94025<br>650-614-7616<br>sbaik@orrick.com<br>cottenweller@orrick.com<br>ssomasekar@orrick.com<br><br>Alex Verbin Chachkes<br>Orrick Herrington & Sutcliffe<br>666 Fifth Avenue<br>New York, NY 10103-0001<br>212-506-3748<br>achachkes@orrick.com<br><br>Donald Erik Daybell<br>Orrick Herrington & Sutcliffe<br>4 Park Plaza<br>Suite 1600<br>Irvine, CA 92614<br>949-567-6700<br>ddaybell@orrick.com<br><br>Jeffrey G Randall<br>Skadden Slate Arps Meagher & Florn<br>525 University Ave<br>Suite 1100<br>Palo Alto, CA 94301<br>650-470-4580<br>jrandall@skadden.com<br><br>Allan Madis Soobert<br>Skadden Slate Arps Meagher & Flom<br>1440 New York Avenue NW<br>Washington, DC 20005<br>202-371-7780<br>asoobert@skadden.com |
| Dell Corporation | Manuel Calderon<br>Daniel T Conrad<br>Thomas Ray Jackson<br>Stacey Garrett White |

20

NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER

| | |
|---|---|
| | Jones Day<br>2727 North Harwood Street<br>Dallas, TX 75201<br>Tel:  214-969-3684<br>mcalderon@jonesday.com<br>dtconrad@jonesday.com<br>trjackson@jonesday.com<br>sgwhite@jonesday.com<br><br>Theodore C. Parsons<br>Jones Day<br>901 Lakeside Ave<br>Cleveland, OH 44114<br>216-586-3939<br>tcparsons@jonesday.com<br><br>Jeffrey G Randall<br>Skadden Slate Arps Meagher & Florn<br>525 University Ave<br>Suite 1100<br>Palo Alto, CA 94301<br>650-470-4580<br>jrandall@skadden.com |
| Microsoft Corporation | Barry Kenneth Shelton<br>Conor Monroe Civins<br>Barry Kenneth Shelton<br>Fish & Richardson<br>111 Congress Ave<br>Suite 810<br>Austin, TX 78701<br>512-226-8105<br>shelton@fr.com<br>civins@fr.com<br>shelton@fr.com<br><br>Kfir B. Levy<br>Indranil Mukerji<br>Fish & Richardson PC<br>1425 K Street, NW<br>Suite 1100<br>Washington, DC 20005<br>202-626-6358<br>kylevy@fr.com<br>mukerji@fr.com<br><br>Joseph P. Reid<br>Fish & Richardson PC<br>12390 El Camino Real<br>San Diego, CA 92130<br>858-678-5070<br>reid@fr.com |
| Hewlett-Packard Company | Clay Erik Hawes<br>David Jack Levy<br>Rick Rambo |

21

NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER

|  | Morgan Lewis & Bockius<br>1000 Louisiana Street<br>Suite 4200<br>Houston, TX 77002<br>713-890-5165<br>ehawes@morganlewis.com<br>dlevy@morganlewis.com<br>rrambo@morganlewis.com |
|---|---|
| Netgear, Inc. | Claudia Lynn Davis<br>Ryan R. Smith<br>Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>650-493-9300<br>cdavis@wsgr.com<br>rsmith@wsgr.com<br><br>Brian David Range<br>Wilson Sonsini Goodrich & Rosati<br>8911 Capital of Texas Highway<br>8911 Capital of Texas Highway<br>West tech 360, Suite 3350<br>Austin, TX 78759<br>512-338-5400<br>brange@wsgr.com<br><br>James A DiBoise<br>Wilson Sonsini Goodrich & Rosati<br>One Market Street<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>415-947-2114<br>jdiboise@wsgr.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 5, 2008

Beth M. Coffey

NOTICE OF MOTION AND MOTION FOR CONFIDENTIALITY ORDER