ORIGINAL
FILED

AUG 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CV 08 80151 MISC

COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH
ORGANISATION,

Plaintiff,

v.

TOSHIBA AMERICA INFORMATION
SYSTEMS, INC., et al.,

Defendants.

E-filing

Subpoenas issued in the matters styled:

*CSIRO v. Buffalo Technology (USA), Inc., et al.*, U.S.D.C. Eastern District of Texas, Civil Action No. 2:05-CV-053-LED;

*Microsoft Corporation, et al. v. CSIRO*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-549-LED;

*CSIRO v. Toshiba America, et al.*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-550-LED; and

*Intel Corporation et al v. CSIRO*, U.S.D.C. Eastern District of Texas, Civil Action No. 6:06-CV-551-LED

## DECLARATION OF MATTHEW S. YUNGWIRTH IN SUPPORT OF MOTION FOR CONFIDENTIALITY ORDER

I, Matthew S. Yungwirth, under penalty of perjury, declare and state as follows:

1.     I am an attorney with the law firm of Duane Morris, LLP, and I am a member in good standing of the bars of the State of Georgia and of the United States District Court for the Northern District of Georgia, among others.  Duane Morris, LLP represents non-party Cisco Systems, Inc. ("Cisco") with respect to third-party discovery in the above-captioned matters.  I am over the age of 21 and am fully competent to testify to all matters contained herein.

2.     Over the past two years, Cisco has been served with a series of non-party subpoenas issued out of this Court in connection with several related lawsuits pending in the Eastern District of Texas that include Civil Action Nos. 2:05-CV-053-LED; 6:06-CV-549-LED; 6:06-CV-550-LED; and 6:06-CV-551-LED (collectively the "CSIRO Actions").  The four document subpoenas served on Cisco in the CSIRO Actions are collectively attached hereto as Exhibit 1.

3.     Cisco is not a party to any of the CSIRO Actions, but it has been the subject of extensive third-party discovery.  Some of that discovery relates to the 1998 Technology License Agreement (the "TLA").  The TLA and a 2001 amendment thereto is attached hereto as Exhibit 2.

4.    The parties in the CSIRO Actions have sought information regarding the TLA, Cisco's acquisition of Radiata, the development of Cisco's products, and a number of other subject matters that are significantly less relevant.

5.    Commonwealth Scientific and Industrial Research Organisation's ("CSIRO") has sought similar information in its negotiations with Cisco regarding their disputes related to the TLA. Mr. Terry Healy and Mr. Denis Redfern have been two of the primary participants in those negotiations on behalf of CSIRO. During those negotiations, Cisco agreed to provide some information to CSIRO, including information on an "outside counsel's eyes only" basis, and some of that same information is the subject of discovery in the CSIRO Actions.

6.    In response to the series of document subpoenas in the CSIRO Actions, Cisco has engaged in a rolling production of more than 20,000 pages of documents at an expense of over $100,000 in attorneys' and vendors' fees associated with the collection, processing and review of the documents. Cisco's document productions were made on each of February 11 and 22, March 5, May 19, June 26, July 11 and August 1, 2008. Copies of the cover letters for Cisco's various document productions are attached as Exhibit 3.

7.    Cisco agreed to produce its confidential information in response to the document subpoenas pursuant to a letter agreement between itself and the parties in the CSIRO Actions, dated January 25, 2008 (the "Letter Agreement"). The Letter Agreement is attached hereto as Exhibit 4.

8.    The Letter Agreement was based on a similarly worded agreement related to the confidential deposition testimony of an ex-Cisco employee who was deposed in Sydney, Australia in October 2007. Similar agreements have been reached with respect to the other depositions of Cisco's current and former employees. These agreements are collectively attached hereto as Exhibit 5.

9.    I have attended five depositions of Cisco's current and former employees that have taken place in California, Ohio, and Sydney, Australia.

10.    As of the filing of this motion, no party has identified any specific information,

2

documents or testimony that it believes is improperly designated by Cisco under the various agreements regarding the designation of Cisco's confidential information.

11.    On June 6, 2008, CSIRO announced for the first time that it believed the Letter Agreement applied only to Cisco's first document production. A copy of the June 6, 2008 letter from CSIRO's counsel in which this announcement is made is attached hereto as Exhibit 6.

12.    Following its receipt of the June 6 letter, Cisco confirmed that each of the Defendants in the CSIRO Actions agreed with Cisco that the Letter Agreement covered all of Cisco's confidential information and that they would agree to a protective order along the lines of the Letter Agreement, if necessary. An email from counsel who agreed as such on behalf of the Defendants in the CSIRO Actions is attached hereto as Exhibit 7.

13.    Cisco also negotiated with CSIRO to reach a compromise agreement regarding the form of a protective order to be entered by this Court because CSIRO would not agree to comply with the Letter Agreement. Throughout those negotiations, CSIRO refused to identify any specific documents that it believed were improperly designated and instead argued that it should be entitled to show all of Cisco's documents that were not purely technical in nature to Terry Healy and Dennis Redfern.

14.    During the negotiations, counsel for CSIRO also represented that Mr. Terry Healy's job responsibilities include, among other things, (a) the prosecution of foreign counterparts to the '069 Patent; and (b) licensing of the '069 Patent outside of the context of the CSIRO Actions, including with respect to licensing negotiations between Cisco and CSIRO. Likewise, CSIRO's counsel represented that Mr. Redfern is a non-lawyer employee of WLAN Proprietary Services, Ltd., a subsidiary of CSIRO that is responsible for licensing the '069 Patent. According to CSIRO's counsel, Mr. Redfern's sole job responsibility for CSIRO is licensing the '069 Patent that is the subject of the CSIRO Actions, including with respect to the licensing negotiations between Cisco and CSIRO.

15.    The general form of the proposed Confidentiality Order and Addendum is along the lines of the Agreed Protective Order entered in the CSIRO Actions. Cisco agreed to that

3

format so that it would be easier for the parties in the CSIRO Actions to keep track of their obligations under the proposed confidentiality order.

16.    Cisco has offered to make its outside counsel's documents available to a CSIRO in-house counsel and consultant, but only if they are not involved in competitive decision-making in the wireless LAN field outside the scope of the CSIRO Actions.  In particular, Cisco offered to make its "outside counsel's eyes only" information available to Messrs. Healy and Redfern if they discontinue their involvement in patent prosecution in the wireless LAN field and patent licensing activities outside the scope of the CSIRO Actions.  Alternatively, Cisco offered to make its "outside counsel's eyes only" designated information available to other CSIRO counsel and consultants who confirmed that they were not involved in competitive decision making, including at least, patent prosecution and licensing in the wireless LAN field.  As a third option, Cisco agreed to consider whether individual documents, to be identified by CSIRO on a document-by-document basis, could be disclosed to Messrs. Healy and Redfern.  The July 24, 2008 letter in which this offer was made to CSIRO is attached as Exhibit 8.

17.    CSIRO rejected Cisco's offers as confirmed by the July 30, 2008 email from CSIRO's counsel attached hereto as Exhibit 9.

18.    During the course of the negotiations with CSIRO's counsel regarding this matter, Mr. Furniss acknowledged that he has not reviewed all of the documents designated by Cisco as "outside counsel's eyes only."

[SIGNATURE APPEARS ON FOLLOWING PAGE]

DECLARATION OF MATTHEW S. YUNGWIRTH IN SUPPORT OF MOTION FOR CONFIDENTIALITY ORDER

I declare under penalty of perjury that the foregoing is true and correct.

Dated August 4, 2008

Matthew S. Yungwirth
(GA Bar No. 783597)
(e-mail: **msyungwirth@duanemorris.com**)

DECLARATION OF MATTHEW S. YUNGWIRTH IN SUPPORT OF MOTION FOR CONFIDENTIALITY ORDER

Declaration of Matthew S. Yungwirth

Exhibit 1

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL
RESEARCH ORGANISATION

V.

BUFFALO TECHNOLOGY (USA), INC., a Delware
corporation, and BUFFALO INC., a Japanese corporation

## SUBPOENA IN A CIVIL CASE

Case Number:[1] 2-05CV-53 LED
(Eastern District of Texas)

TO:  Custodian of Records
     Cisco Systems, Inc.
     170 W. Tasman Drive
     San Jose, CA 95134

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE  Townsend and Townsend and Crew LLP 379 Lytton Avenue, Palo Alto, CA 94301 | DATE AND TIME March 9, 2006 at 10:00 a.m. |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiff | DATE February 27, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Thomas F. Fitzpatrick                    (650)326-2400
Townsend and Townsend and Crew LLP
379 Lytton Avenue, Palo Alto, CA 94301

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 2/27/2006 | Cisco Systems, Inc.<br>300 East Tasman Drive, San Jose, CA 95134 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Ginger Hupp, authorized to accept service of process on behalf of Cisco Systems, Inc. | Personal Service |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Larry Tisdall | Registered Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on      2/28/2006

DATE

SIGNATURE OF SERVER
Western Attorney Services
75 Columbia Square, San Francisco, CA 94103

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

ATTACHMENT A

## DEFINITIONS

1.  "Cisco Systems, Inc." "You," and/or "Your," refer to Cisco Systems, Inc., and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

2.  "Radiata" refers to Radiata, Inc., and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

3.  "Document" means any written, printed, recorded or graphic matter that is or has been in your actual and constructive possession or control, regardless of the medium, on which it is produced, reproduced, or stored, including but not limited to, correspondence, records, reports, memoranda, notes, letters, telegrams, telexes, messages (including, without limitation reports of telephone conversations and conferences), studies, analyses, books, magazines, newspapers, publications, booklets, pamphlets, circulars, bulletins, instructions, minutes or other communications (including but not limited to, interoffice and interoffice communications), questionnaires, surveys, contracts, memoranda of agreements, assignments, books of accounts, orders, working papers, records or summaries of negotiations, voice recordings, records or summaries of personal interviews or conversations, appointment calendars, diaries, schedules, printouts, drawings, specifications, certificates of registration, applications for registration, graphs, charts, studies, plans and planning materials, statistical statements, compilations, forecasts, work papers, invoices, statement notebooks, data sheets, microfilm microfiche, photographic negatives, architectural diagrams, blue prints, schematics, logic diagrams, timing diagrams, flow charts, pictures, photographs, belts, tapers,

1

magnetic tapes, paper tapes, platter output recordings, electronic mail records and messages, magnetic

and optical disks, data cards, films, data processing films, and all other computer-readable records,

files, and programs, object codes, source codes, and all other written, printed, or recorded matter of

any kind, and all other data compilations from which information can be obtained and translated, if

necessary, and all originals (or, if originals are unavailable, identical copies thereof), drafts and non-

identical copies thereof. If the original of a document is unavailable or was not reviewed or received

by a particular person, "document" includes any identical copy of the original. Any document bearing

any marks, including but not limited to, initials, stamped indicia, comments or notations, not part of

the original text or photographic reproduction thereof, in a separate document.

    4.  The term "relate," "relates," or "relating" means concerning, referring to, summarizing,

reflecting, constituting, containing, embodying, pertaining to, involved with, included in, mentioning,

consisting of, comprising, showing, commenting on, evidencing, describing, or otherwise discussing

the subject matter.

    5.  The term "and", "or," and "and/or" shall be construed in the conjunctive or the disjunctive,

whichever makes the request more inclusive.

    6.  The use of the singular shall be deemed to include the plural, and the use of one gender

shall include the other as are appropriate in the context.

## INSTRUCTIONS

    1.    If any document covered by this request is withheld by reason of a claim of

privilege, a list is to be furnished within 30 days identifying any such document for which the

privilege is claimed together with the following information with respect to any such

documents withheld: author, recipient, sender, indicated or blind copies, date, general subject

matter, basis on which the privilege is claimed, and the number of items of this Subpoena to

which such document relates.

2.    In the event that any document called for by this Subpoena has been destroyed, lost, discarded, otherwise disposed of, or is otherwise unavailable, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal; manner of disposal; reason for disposal; person authorizing the disposal; and person disposing of the document.

3.    If any item of this Subpoena is objected to as overly broad or unduly burdensome, please produce those documents or things that are unobjectionable and specifically identify the respect in which the item is allegedly overly broad or burdensome, respectively.

4.    All questions regarding the meaning of interpretation of this Subpoena should be directed to the counsel who served discovery request.

## DOCUMENTS REQUESTED

1)  Documents created in connection with the due diligence work related to the acquisition of Radiata, Inc. by Cisco Systems, Inc.

2)  Evaluations, valuations and studies of Radiata and Radiata's tangible and intangible assets in connection with the due diligence work undertaken by Cisco Systems, Inc. regarding Radiata.

3)  Meeting notes, presentations, reports and other documents that provided or reflected the reasons Cisco Systems Inc. undertook to acquire Radiata.

4)  Copies of the final agreement by which Cisco Systems, Inc. acquired Radiata.

60711742 v1

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

Northern DISTRICT OF California

Commonwealth Scientific and Industrial Research Organisation
V.
Toshiba America Information Systems, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]
CSIRO v: Toshiba America, ct al.: U.S.D.C., Eastern District of Texas, Tyler Div., Case No. 6:06-CV-550-LED

TO: Corporation Service Company, Agent for Service of Process for:
    CISCO Systems, Inc.
    P.O. Box 526036
    Sacramento, CA 95832

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Exhibit A attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Morgan Miller Blair, 1331 N. California Blvd., Ste. 200, Walnut Creek, CA 94596 | October 19, 2007 at 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants 3Com Corporation, D-Link Systems, Inc., Accton Technology Corporation, SMC Networks, Inc. | 9/14/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Eric W. Benisek, Esq. Morgan Miller Blair 1331 California Street, Suite 200, Walnut Creek, CA 94596 (925) 979-3600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| 9/14/07 | Walnut Creek, California |
| DATE | PLACE |

SERVED:

| | |
|---|---|
| Corporation Service Company for CISCO Systems, Inc. | Overnight Delivery - U.S. Express Mail |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| Tonia Torres | Legal Secretary |
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 9/14/07

_____
SIGNATURE OF SERVER
1331 N. California Blvd., Suite 200
Walnut Creek, CA 94596
ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## EXHIBIT A

## DEFINITIONS

A.    "RELATING TO" means concerning, verifying, approving, constituting, consisting of, summarizing, describing, mentioning, evidencing, recounting, reporting, discussing, explaining, reflecting, or referring to.

B.    "CISCO" means and refers jointly and individually to Cisco Systems, Inc. and its agents, employees, officers, and directors.

C.    "DOCUMENTS" means all writings, recordings, and photographs, including the original, all drafts, and any and each copy bearing notations or marks not found on the original or draft, of any written, recorded, or graphic matter, however produced or reproduced, including, but not limited to, any typed or printed matter, microfilm, photographs, maps, correspondence, letters, interoffice communications, diaries, calendars, memoranda insurance policies, contracts, checks, statements of account, receipts, summaries, notes, papers, files, books, records, telegrams, messages, reports, tables, graphs, computer printouts, tape recordings, charts, logs, ledgers, surveys, blue prints, engineering or architectural drawings or diagrams, studies, manuals, consultants' or experts' reports, resumes, exhibits, notices, instructions, minutes, purchase orders, financial records, accounting records, tax records, county or tax worksheets, magnetic tapes, and any other data compilations from which the information can be obtained or translated. The term "DOCUMENTS" also includes all electronic media on which responsive information is stored or recorded, including, but not limited to, all computer databases, indexes, and e-mails.

D.    "SKELLERN" means and refers to David Skellern.

E.    "RADIATA" means and refers jointly and individually to Radiata Communications, Inc., Radiata, Inc., Radiata Communications, Pty Ltd, and their agents, employees, officers, and directors.

ORGAN
ILLER
AIR,
N
RPORATION

1    F.    The "069 PATENT" means and refers to United States Patent No.

2    5,487,069 entitled "Wireless LAN."

3    G.    "IEEE" means and refers to the Institute of Electrical and Electronics

4    Engineers, Inc.

5    H.    "COMMONWEALTH" means and refers to the Commonwealth

6    Scientific and Industrial Research Organisation.

7    I.    "802.11" means and refers to the 802.11a and 802.11g standards

8    adopted by the IEEE, and the draft 802.11n standard that has yet to be adopted by

9    the IEEE.

10                    **DOCUMENTS TO BE PRODUCED**

11    1.    All DOCUMENTS RELATING TO SKELLERN communications

12    RELATING TO IEEE.

13    2.    All DOCUMENTS RELATING TO SKELLERN communications

14    RELATING TO the 069 PATENT.

15    3.    All DOCUMENTS RELATING TO SKELLERN communications

16    RELATING TO 802.11.

17    4.    All DOCUMENTS RELATING TO communications between

18    CISCO and RADIATA RELATING TO the 069 PATENT.

19    5.    All DOCUMENTS RELATING TO communications between

20    CISCO and COMMONWEALTH RELATING TO the 069 PATENT.

21    6.    All DOCUMENTS RELATING TO communications between

22    RADIATA and COMMONWEALTH RELATING TO the 069 PATENT.

23    7.    All DOCUMENTS RELATING TO licensing and/or sub-licensing by

24    RADIATA from COMMONWEALTH.

25    8.    All DOCUMENTS RELATING TO proposed licensing and/or sub-

26    licensing by RADIATA from COMMONWEALTH.

27    9.    All DOCUMENTS RELATING TO licensing and/or sub-licensing by

28    CISCO from COMMONWEALTH.

ORGAN
LLER
AIR,
N
RPORATION

2

**EXHIBIT A**                                    CASE NO. ED CV 04-00079 VAP (SSX)

1    10.    All DOCUMENTS RELATING TO proposed licensing and/or sub-

2    licensing by CISCO from COMMONWEALTH.

3.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**    CASE NO. ED CV 04-00079 VAP (SSX)
MMB:7269-019:821662.1







OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Northern  DISTRICT OF  California

Commonwealth Scientific and Industrial Research Organisation
V.
Toshiba America Information Systems, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]
CSIRO v. Toshiba America, et al.: U.S.D.C., Eastern
District of Texas, Tyler Div., Case No. 6:06-CV-550-
LED

TO: CISCO Systems, Inc., c/o Corporation Service Company
    2730 Gateway Oaks Drive, Suite 100
    Sacramento, CA 95833

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  | . |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects): See Exhibit A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Morgan Miller Blair, 1331 N. California Blvd., Ste. 200, Walnut Creek, CA  94596 | April 1, 2008 at 10:00 a.m |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Justin J. Schnitzler* Attorney for Defendant Accton Technology Corporation | 2/26/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Justin J. Schnitzler, Esq. Morgan Miller Blair 1331 California Street, Suite 200, Walnut Creek, CA 94596 (925) 979-3317

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| 2/26/07 | Walnut Creek, California |
| DATE | PLACE |

SERVED:

| | |
|---|---|
| Corporation Service Company for CISCO Systems, Inc. | Overnight Delivery - U.S. Express Mail |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| Kathy Deboever | Legal Secretary |
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2/26/07

SIGNATURE OF SERVER
1331 N. California Blvd., Suite 200
Walnut Creek, CA 94596
ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

**EXHIBIT A**

**DEFINITIONS**

A.    "CISCO" means and refers jointly and individually to Cisco Systems, Inc. and its agents, employees, officers, and directors.

B.    "DOCUMENTS" means all writings, recordings, and photographs, including the original, all drafts, and any and each copy bearing notations or marks not found on the original or draft, of any written, recorded, or graphic matter, however produced or reproduced, including, but not limited to, any typed or printed matter, microfilm, photographs, maps, correspondence, letters, interoffice communications, diaries, calendars, memoranda insurance policies, contracts, checks, statements of account, receipts, summaries, notes, papers, files, books, records, telegrams, messages, reports, tables, graphs, computer printouts, tape recordings, charts, logs, ledgers, surveys, blue prints, engineering or architectural drawings or diagrams, studies, manuals, consultants' or experts' reports, resumes, exhibits, notices, instructions, minutes, purchase orders, financial records, accounting records, tax records, county or tax worksheets, magnetic tapes, and any other data compilations from which the information can be obtained or translated. The term "DOCUMENTS" also includes all electronic media on which responsive information is stored or recorded, including, but not limited to, all computer databases, indexes, and e-mails.

C.    "RADIATA" means and refers jointly and individually to Radiata Communications, Inc., Radiata, Inc., Radiata Communications, Pty Ltd, and their agents, employees, officers, and directors.

D.    "CSIRO" or "COMMONWEALTH" means and refers to the Commonwealth Scientific and Industrial Research Organisation.

E.    "MARVELL" means and refers jointly and individually to Marvell Technology Group Ltd. and its agents, employees, officers, and directors.

F.    "STMicro" means and refers jointly and individually to

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

EXHIBIT A                                    CASE NO. 6:06-CV-551 (LED)

1

1  STMicroelectronics and its agents, employees, officers, and directors.

2      E.    The "069 PATENT" means and refers to United States Patent No.

3  5,487,069 entitled "Wireless LAN."

**DOCUMENTS TO BE PRODUCED**

5      1.    All DOCUMENTS regarding any valuation by CISCO of RADIATA

6  prior to its purchase that are not protected by the attorney-client privilege or

7  attorney work product doctrine.

8      2.    All DOCUMENTS that are communications between CISCO and

9  RADIATA regarding the negotiations to purchase RADIATA.

10     3.    All register transfer level ("RTL") code and/or source code provided

11  by CSIRO to RADIATA.

12     4.    All hardware and/or prototype(s) provided by CSIRO to RADIATA.

13     5.    The settlement agreement and/or license between CISCO and Wi-

14  Lan, Inc.

15     6.    All DOCUMENTS that are communications between CISCO and

16  CSIRO, or CISCO and any other party, regarding the scope of the RADIATA

17  Technology License Agreement ("TLA"), including but not limited to what

18  products are considered "covered" under the TLA and what other companies are

19  covered under the TLA such as any related CISCO.

20     7.    All DOCUMENTS that are communications between CISCO and

21  MARVELL regarding performance under the terms of any sublicense, including

22  but not limited to calculation and payment of applicable royalties and licensed

23  sales to other parties under any sublicense.

24     8.    All DOCUMENTS that are communications between CISCO and

25  STMicro regarding performance under the terms of any sublicense, including but

26  not limited to calculation and payment of applicable royalties and licensed sales to

27  other parties under any sublicense.

28     9.    All DOCUMENTS discussing, analyzing or describing the

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

2

EXHIBIT A                                    CASE NO. 6:06-CV-551 (LED)

1   commercial success or failure of the products incorporating the wireless chipset(s)

2   based in whole or in part on RADIATA technology.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

3



AO88 (Rev. 12/07) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## Northern District of California

Microsoft, Hewlett packard & Netgear v. Commonwealth Scientific and
industrial Research Organisation ("CSIRO); Intel and Dell v. CSIRO

**V.**

Commonwealth Scientific and Industrial Research Organisation v. Toshiba
America Information Systems, et al.

### SUBPOENA IN A CIVIL CASE

Case Number:[1] E.D. of Texas Case Nos.:
6:06-CV-00549; 00550 & 00551

TO:

Corporation Service Co., Agent for Service of Process for Cisco Systems, Inc.
2730 Gateway Oaks Dr., Suite 100
Sacramento, CA 95833

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Townsend and Townsend and Crew LLP | May 20, 2008, at 9:00 a.m. |
| 379 Lytton Avenue, Palo Alto, CA 94301 - Telephone: (650) 326-2400 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | May 5, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert D. Tadlock, Townsend and Townsend and Crew LLP, Attorneys for CSIRO
379 Lytton Avenue, Palo Alto, CA 94301 - Telephone: (650) 326-2400

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO89 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A

### DEFINITIONS

1.    "Cisco" "You," and/or "Your," refer to Cisco Systems, Inc., and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

2.    "Radiata" refers to Radiata, Inc., and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, including but not limited to Radiata Communications Pty Limited and Cisco Systems Wireless Networking (Australia) Pty Limited, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

3.    "CSIRO" refers to the Commonwealth Scientific and Industrial Research Organisation.

4.    "Intel" refers to Intel Corporation, and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

5.    "Marvell" refers to Marvell Technology Group Ltd. and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, including but not limited to Marvell Semiconductor, Inc., Marvell Asia Pte., Ltd., and Marvell International, Ltd.,and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its behalf.

6.    "STMicro" refers to STMicroelectronics and to all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on its

1

behalf.

7.  "'069 patent" means and refers to United States Patent No. 5,487,069 entitled "Wireless LAN"

8.  802.11 means and refers to the 802.11a and 802.11g standards adopted by the IEEE, and the draft 802.11n standard that has yet to be adopted by the IEEE, and to the 802.11b standard where specifically mentioned.

9.  "Document" means any written, printed, recorded or graphic matter that is or has been in your actual and constructive possession or control, regardless of the medium, on which it is produced, reproduced, or stored, including but not limited to, correspondence, records, reports, memoranda, notes, letters, telegrams, telexes, messages (including, without limitation reports of telephone conversations and conferences), studies, analyses, books, magazines, newspapers, publications, booklets, pamphlets, circulars, bulletins, instructions, minutes or other communications (including but not limited to, interoffice and interoffice communications), questionnaires, surveys, contracts, memoranda of agreements, assignments, books of accounts, orders, working papers, records or summaries of negotiations, voice recordings, records or summaries of personal interviews or conversations, appointment calendars, diaries, schedules, printouts, drawings, specifications, certificates of registration, applications for registration, graphs, charts, studies, plans and planning materials, statistical statements, compilations, forecasts, work papers, invoices, statement notebooks, data sheets, microfilm microfiche, photographic negatives, architectural diagrams, blue prints, schematics, logic diagrams, timing diagrams, flow charts, pictures, photographs, belts, tapers, magnetic tapes, paper tapes, platter output recordings, electronic mail records and messages, magnetic and optical disks, data cards, films, data processing films, and all other computer-readable records, files, and programs, object codes, source codes, and all other written, printed, or recorded matter of

any kind, and all other data compilations from which information can be obtained and translated, if necessary, and all originals (or, if originals are unavailable, identical copies thereof), drafts and non-identical copies thereof. If the original of a document is unavailable or was not reviewed or received by a particular person, "document" includes any identical copy of the original. Any document bearing any marks, including but not limited to, initials, stamped indicia, comments or notations, not part of the original text or photographic reproduction thereof, in a separate document.

10.    The term "relate," "relates," or "relating" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, included in, mentioning, consisting of, comprising, showing, commenting on, evidencing, describing, or otherwise discussing the subject matter.

11.    The term "and", "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever makes the request more inclusive.

12.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

13.    "TLA" means the February 23, 1998 Technology License Agreement between CSIRO and Radiata and any amendments thereto.

14.    The term "due diligence" means activities carried out, or proposed to be carried out, by or on behalf of an entity to provide assurance that a proposed or potential course of action involving the entity has a rational basis and includes, without limitation, investigation of financial, market, legal and competition issues, including issue relating to intellectual property.

### INSTRUCTIONS

1.    If any document covered by this request is withheld by reason of a claim of privilege, a list is to be furnished within 30 days identifying any such document for which the privilege is claimed together with the following information with respect to any such

3

documents withheld: author, recipient, sender, indicated or blind copies, date, general subject matter, basis on which the privilege is claimed, and the number of items of this Subpoena to which such document relates.

2.    In the event that any document called for by this Subpoena has been destroyed, lost, discarded, otherwise disposed of, or is otherwise unavailable, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal; manner of disposal; reason for disposal; person authorizing the disposal; and person disposing of the document.

3.    If any item of this Subpoena is objected to as overly broad or unduly burdensome, please produce those documents or things that are unobjectionable and specifically identify the respect in which the item is allegedly overly broad or burdensome, respectively.

4.    All questions regarding the meaning of interpretation of this Subpoena should be directed to the counsel who served the discovery request.

### DOCUMENTS REQUESTED

1)    Documents created in connection with the due diligence work related to the acquisition of Radiata by Cisco.

2)    Evaluations, valuations, and studies of Radiata and Radiata's tangible and intangible assets in connection with the due diligence work undertaken by Cisco regarding Radiata.

3)    Meeting notes, presentations, reports, and other documents that provided or reflected the reasons Cisco undertook to acquire Radiata.

4)    Copies of the final agreement by which Cisco acquired Radiata and any and all amendments of that agreement and any associated agreements, including the TLA and any amendments of the TLA.

5)    All documents regarding any valuation by Cisco of Radiata prior to its acquisition.

4

6) All documents that are communications between Cisco and Radiata regarding the proposal to acquire, or the negotiations to acquire Radiata.

7) All computer code, including software, HDL code, register transfer level ("RTL") code and/or source code provided to Radiata relating to the provision of technology under the TLA whether by CSIRO or any other person.

8) All documents relating to hardware and/or prototype(s) provided to Radiata relating to the TLA.

9) All documents that are communications between Cisco and any party other than CSIRO, regarding the scope of the TLA, including but not limited to what products are or might be considered "covered" under the TLA and what companies are covered under TLA including any companies related to Cisco Systems, Inc.

10) All documents that are communications between Cisco and Marvell relating to the TLA or the subject matter of the TLA, including any sublicense or documents regarding performance under the terms of any sublicense, including but not limited to Cisco's provision of HDL or RTL code to Marvell, Marvell's obligation relating to maintenance of any such HDL or RTL code, and calculation and payment of applicable royalties and licensed sales to other parties under any sublicense.

11) All documents that are communications between Cisco and STMicro relating to the TLA or the subject matter of the TLA, including any sublicense or documents regarding performance under the terms of any sublicense, including but not limited to Cisco's provision of HDL or RTL code to STMicro, STMicro's obligations relating to maintenance of any such HDL or RTL code, and calculation and payment of applicable royalties and licensed sales to other parties under any sublicense.

12) All documents relating to communications between Cisco and Radiata relating to the '069 patent.

13)    Any written or oral agreement(s) between Cisco and Intel (whether it includes any third party or not) relating to the 802.11a, b, g, and/or pre-n wireless markets, including the research and development, manufacture, sale, marketing, or advertising of any 802.11 product (such as joint development, licensing, or co-marketing agreements) and all documents relating to such agreement(s).

14)    All documents relating to any meeting between any Cisco executive with any Intel executive regarding the 802.11a, b, g, and/or pre-n wireless markets or products including without limitation any documents identifying the dates of such meetings, any communications (both internal and external to Cisco) relating to the planning, preparation, or substance of such a meeting, meeting minutes, appointment calendars, summaries, reports or other communications, whether including such executive or not, relating to any such meeting.

15)    Any documents referencing or discussing any meeting between Bill Rossi and/or Larry Birenbaum and any Intel employee relating in any way to the wireless market, including without limitation any documents identifying the dates of such meetings, any communications (both internal and external to Cisco) relating to the planning, preparation, or substance of such a meeting, meeting minutes, summaries, reports or other communications relating to any such meeting.

16)    Any document relating to any suggestion, consideration, discussion, or agreement that Cisco sell only wireless access points, routers or other similar products and Intel sell only wireless client products such as network interface cards ("NIC"), mini-pci cards or mini-cards.

17)    All documents relating to Cisco's decision to exit the NIC market including without limitation any email, memoranda, reports, financial analyses or business justifications for the decision, including but not limited to any documents presented to any Cisco executives and/or the Cisco Board of Directors responsible for such a decision.

18)    All documents relating to any financial transactions (other than agreements solely for the sale of products) between Intel and Cisco.

6

19)    All documents relating to any discussion, meeting, or communication between Cisco and Intel relating to Radiata or the TLA, including but not limited to any valuations of Radiata's tangible and intangible assets, and any investment in, or acquisition of, Radiata or any licenses or sublicenses under or relating to the TLA.

20)    All documents relating to any discussion, meeting, or communication between Cisco and any party other than CSIRO relating to the '069 patent, including but not limited to discussions, meetings, or communications related to any legal claim with regard to the '069 patent such as, by way of example only, prior art searches, non-infringement opinions, damages analyses, or other litigation strategies.

21)    All documents relating to any policies, procedures, processes, directives or corporate guidelines of Cisco relating to patent marking or products made by or on behalf of Cisco or its sub-licensees in accordance with 35 U.S.C. § 287(a), including but no limited to documents relating to Cisco's marking of products subject to the TLA.

22)    All documents relating to the DMT50 chip and any derivatives thereof.

61349913 v1

7

430

500

**FedEx Express** US Airbill

FedEx Tracking Number 8558 0909 2568

SAC21

Recipient's Copy

**1 From** This portion can be removed for Recipient's records.

Date 5/5/08    FedEx Tracking Number 8558090925568

Sender's Name Robert D. Tadlock    Phone 650-326-2400

Company TOWNSEND & TOWNSEND & CREW LLP

Address 379 LYTTON AVE

City PALO ALTO    State CA    ZIP 94301

**2 Your Internal Billing Reference** CSC - Lawyers Incorporating 9/C CUL-5/00

**3 To**

Recipient's Name CSC - Lawyers Incorporating

Company

Address 2730 Gateway Oaks Dr

Suite 100

City Sacramento    State CA    ZIP 95833

0330132952

8558 0909 2568

Form 0215

**4a Express Package Service**

☑ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx First Overnight
☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service**

☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**

☑ FedEx Envelope
☐ FedEx Pak
☐ FedEx Box
☐ FedEx Tube
☐ Other

**6 Special Handling**

☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday

Does this shipment contain dangerous goods?

☐ No
☐ Yes
☐ Yes Dry Ice
☐ Cargo Aircraft Only

**7 Payment**

☑ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

**8 NEW Residential Delivery Signature Options**

☐ No Signature Required
☐ Direct Signature
☐ Indirect Signature

Total Packages    Total Weight    Total Declared Value

519

FedEx
8558 0909 2568
0215

WD SMFA

TUE - 06 MAY A1
PRIORITY OVERNIGHT

95833
CA-US
SMF

fedex.com 1.800.GoFedEx 1.800.463.3339

RECIPIENT: PEEL HERE

Declaration of Matthew S. Yungwirth

Exhibit 2 – FILED UNDER SEAL

Declaration of Matthew S. Yungwirth

Exhibit 3

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

February 11, 2008

*VIA E-MAIL (ebenisek@mmblaw.com),*
*AND FEDEX*

Eric W. Benisek, Esq.
Morgan Miller Blair
1331 North California Boulevard, Suite 200
Walnut Creek, CA 94596

     Re:   *CSIRO v. Toshiba, et al.*;
             **Subpoena Issued to Cisco Systems, Inc.**

Dear Eric:

     This letter is to confirm Cisco Systems, Inc.'s ("Cisco") production of documents in response to the subpoena issued by the United States District Court for the Northern District of California in connection with Civil Action No. 6:06-cv-00550-LED. As you are aware, Cisco objected to the subpoena on the grounds that certain of the subpoenaed documents are highly confidential to Cisco and that the Agreed Protective Order was not sufficient to protect the confidentiality of those documents. Nevertheless, Cisco agreed to produce its highly confidential documents, subject to an agreement that the documents could be designated as "Outside Counsel's Eyes Only." After several months of negotiation, the Joint Defense Group parties and CSIRO agreed that Cisco could designate its documents as "outside counsel's eyes only," according to the terms of my January 25, 2008 letter to you and Dan Furniss. On February 4, 2008, we received the executed letter agreement from CSIRO's counsel and we immediately prepared Cisco's documents for production.

     We have enclosed with this letter a CD that contains Cisco's initial document production. Certain of the documents on the CD are designated as "Outside Counsel's Eyes Only" and should be handled and maintained according to the terms of our letter agreement. The remaining documents on the CD should be handled and maintained according to the terms of the Agreed Protective Order that was entered by Judge Davis in Civil Action No. 6:06-cv-00550-LED.

     Finally, as I previously indicated, we expect to produce a very limited number of additional Cisco documents shortly. I will let you know when to expect that supplemental

DuaneMorris

Eric W. Benisek, Esq.
February 11, 2008
Page 2

production as soon as possible.  In the meantime, feel free to give me a call if you have any
questions about Cisco's document production.

Sincerely,

Matthew Yungwirth

Enclosure
cc:    Dan Furniss (via email *difurniss@townsend.com*)
       Woody Jameson
       Matthew Gaudet

PS|Ship - FedEx Label                                                    Page 2 of 2



**package id**
0050485
**ship date**
Mon, Feb 11
**to**
Eric W. Benisek, Esq.
Morgan Miller & Blair
1331 N California Blvd
Ste 200
Walnut Creek , CA  94596-
4544 US
925.937.3600
ebenisek@mmblaw.com
**residential address**
No
**return label**
No

**from**
Matthew Yungwirth (4529)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309 US
404.253.6935
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Belinda K. Ellerby
(404) 253-6906
bkellerby@duanemorris.com
**create time**
02/11/08, 2:54PM

**vendor**
FedEx
**tracking number**
790936579592
**service**
FedEx Priority
**packaging**
FedEx Envelope
**signature**
Indirect signature - at or
near address

**courtesy quote**
12.26
*The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.*

**Legal Terms and Conditions**
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your
shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim
in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or
misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.
Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic
value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct,
incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot
exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable
instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable
FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions,
including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the
recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and
conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-
800-463-3339).
                  ©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
                  Other product and company names listed are trademarks or trade names of their respective companies.

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

February 22, 2008

*VIA E-MAIL (ebenisek@mmblaw.com),*
*AND FEDEX*

Eric W. Benisek, Esq.
Morgan Miller Blair
1331 North California Boulevard, Suite 200
Walnut Creek, CA 94596

      Re:   *CSIRO v. Toshiba, et al.*;
             Subpoena Issued to Cisco Systems, Inc.

Dear Eric:

      We have enclosed with this letter two CDs that contain Cisco System, Inc.'s second and third volumes of documents produced in response to the subpoena issued by the United States District Court for the Northern District of California in connection with Civil Action No. 6:06-cv-00550-LED. Please be aware that the CD marked as "Vol. 2" contains documents Bates-labeled CS00003562 – CS00003619. Some of those documents are designated as "Outside Counsel's Eyes Only" and should be handled and maintained according to the terms of our January 25, 2008 letter agreement. The CD marked as "Vol. 3" contains the License and Distribution Agreement (Bates-labeled CS00003620 – CS00003649) that was the subject of our February 18 letter agreement. The License and Distribution Agreement should be handled and maintained according to the January 25 and February 18, 2008 letter agreements.

      Feel free to give me a call if you have any questions about Cisco's document production.

                    Sincerely,

                    Matthew Yungwirth

Enclosures
cc:    Dan Furniss (via FedEx, Vol. 2 enclosed)
       Marc Ackerman (via E-mail to *mackerman@ny.whitecase.com*)
       Woody Jameson

PS|Ship - FedEx Label                                                    Page 2 of 2



**package id**
0051944
**ship date**
Fri, Feb 22
**to**
Eric W. Benisek, Esq.
Morgan Miller Blair
1331 N California Blvd
Ste 200
Walnut Creek , CA  94596-
4544  US
925.937.3600
**residential address**
No
**return label**
No

**from**
Matthew Yungwirth  (4529)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309  US
404.253.6935
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Belinda K. Ellerby
(404) 253-6906
bkellerby@duanemorris.com
**create time**
02/22/08, 3:04PM

**vendor**
FedEx
**tracking number**
798380769576
**service**
FedEx Priority
**packaging**
FedEx Envelope
**signature**
Indirect signature - at or
near address

**courtesy quote**
12.26
*The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.*

### Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

PS|Ship - FedEx Label                                                                 Page 2 of 2

 

**package id**
0051943
**ship date**
Fri, Feb 22
**to**
Daniel J. Furniss, Esq.
Townsend & Townsend &
Crew LLP
379 Lytton Ave
Palo Alto , CA  94301-1479
US
(650) 326-2400
djfurniss@townsend.com
**residential address**
No
**return label**
No

**from**
Matthew Yungwirth  (4529)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309  US
404.253.6935
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Belinda K. Ellerby
(404) 253-6906
bkellerby@duanemorris.com
**create time**
02/22/08, 2:57PM

**vendor**
FedEx
**tracking number**
798880584747
**service**
FedEx Priority
**packaging**
FedEx Envelope
**signature**
Indirect signature - at or
near address

**courtesy quote**
12.26
The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.

**Legal Terms and Conditions**
 Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your
 shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim
 in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or
 misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.
 Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic
 value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct,
 incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot
 exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable
 instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable
 FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions,
 including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the
 recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and
 conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-
 800-463-3339).

©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

March 5, 2008

*VIA E-MAIL (ebenisek@mmblaw.com)*,
*confirmation via U.S. Mail*

Eric W. Benisek, Esq.
Morgan Miller Blair
1331 North California Boulevard, Suite 200
Walnut Creek, CA 94596

> Re:  *CSIRO v. Toshiba, et al.*;
> Subpoena Issued to Cisco Systems, Inc.

Dear Eric:

We have enclosed with this letter an additional document that is being produced by Cisco Systems, Inc. ("Cisco") in response to the subpoena issued by the United States District Court for the Northern District of California in connection with Civil Action No. 6:06-cv-00550-LED. Please be aware that the document, Bates-labeled CS00003650, is designated as "Outside Counsel's Eyes Only" and should be handled and maintained according to the terms of our January 25, 2008 letter agreement.

Feel free to give me a call if you have any questions about Cisco's document production.

Sincerely,

Matthew Yungwirth

Enclosure
cc:    Dan Furniss (*via e-mail w/ enclosure*)
       Woody Jameson

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

May 19, 2008

**VIA FEDERAL EXPRESS**

Eric Benisek, Esq.
Vasquez Benisek & Lindgren, LLP
3685 Diablo Blvd., Suite 300
Lafayette, CA 94549

Dan Furniss, Esq.
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

   Re: *CSIRO v. Toshiba, et al.*;
     **Subpoenas Issued to Cisco Systems, Inc.**

Dear Eric and Dan:

  We have enclosed with this letter additional documents that are being produced by Cisco Systems, Inc. ("Cisco") in response to the subpoenas issued by the United States District Court for the Northern District of California in connection with Civil Action Nos. 6:06-cv-00549, -000550 and -00551. These documents are Bates-labeled CS 3651 – CS 9028. Please be aware that some of the documents are designated as "Outside Counsel's Eyes Only" and should be handled and maintained according to the terms of our January 25, 2008 letter agreement.

  Feel free to give me a call if you have any questions about Cisco's document production.

       Sincerely,

       Matthew Yungwirth (gcd)

       Matthew Yungwirth

Enclosure

cc: Woody Jameson

DUANE MORRIS LLP

1180 WEST PEACHTREE STREET, SUITE 700   ATLANTA, GA 30309-3448    PHONE: 404.253.6900  FAX: 404.253.6901

     

**package id**
0063616
**ship date**
Mon, May 19
**to**
Eric Benisek
Vasquez Benisek &
Lindgren, LLP
3685 Diablo Blvd., Suite
300
Lafayette , CA  94549  US
404-253-6983
**residential address**
No
**return label**
No

**notification type**
Delivery
**notification recipients**
jcdaley@duanemorris.com

**from**
Jill Daley  (5000)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309  US
404.253.6983
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Jill Daley
404-253-6983
jcdaley@duanemorris.com
**create time**
05/19/08, 3:16PM

**vendor**
FedEx
**tracking number**
798444469068
**service**
FedEx Standard Overnight
**packaging**
FedEx Envelope
**courtesy quote**
11.29
*The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.*

**Legal Terms and Conditions**
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your
shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim
in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or
misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.
Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic
value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct,
incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot
exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable
instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable
FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions,
including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the
recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and
conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-
800-463-3339).

©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

PS|Ship - FedEx Label                                                      Page 2 of 2

# PS◇SHIP™



**package id**
0063618
**ship date**
Mon, May 19
**to**
Dan Furniss
Townsend & Townsend &
Crew, LLP
379 Lytton Ave
Palo Alto , CA  94301-
1479  US
404-253-6983
**residential address**
No
**return label**
No

**notification type**
Delivery
**notification recipients**
jcdaley@duanemorris.com

**from**
Jill Daley  (5000)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309  US
404.253.6983
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Jill Daley
404-253-6983
jcdaley@duanemorris.com
**create time**
05/19/08, 3:18PM

**vendor**
FedEx
**tracking number**
790017355111
**service**
FedEx Standard Overnight
**packaging**
FedEx Envelope
**courtesy quote**
11.29
*The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

## DuaneMorris°

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

June 26, 2008

**VIA FEDERAL EXPRESS**

Eric Benisek, Esq.
Vasquez Benisek & Lindgren, LLP
3685 Diablo Blvd., Suite 300
Lafayette, CA 94549

Dan Furniss, Esq.
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

       Re:   *CSIRO v. Toshiba, et al.*;
              Subpoenas Issued to Cisco Systems, Inc.

Dear Eric and Dan:

      We have enclosed with this letter additional documents that are being produced by Cisco Systems, Inc. ("Cisco") in response to the subpoenas issued by the United States District Court for the Northern District of California in connection with Civil Action Nos. 6:06-cv-00549, -000550 and -00551. These documents are Bates-labeled CS00009209 – CS00014271. However, Cisco has withheld the documents within that Bates range that Cisco has designated as "Outside Counsel's Eyes Only" according to the terms of our January 25, 2008 Letter Agreement. Based on the enclosed email and letter from CSIRO's counsel, we are concerned that CSIRO does not intend to abide by the Letter Agreement with respect to all of Cisco's document productions. Upon written confirmation (by letter or email) that both CSIRO and the Joint Defense Group will abide the terms of the January 25 Letter Agreement with respect to all Cisco document productions, we will produce these additional documents to you.

Duane Morris

Eric Benisek, Esq.
Dan Furniss, Esq.
June 26, 2008
Page 2

Feel free to give me a call if you have any questions about Cisco's document production.

Sincerely,

*Matthew Yungwirth (gcd)*

Matthew Yungwirth

Enclosures

cc:    Woody Jameson

## Daley, Jill C.

**From:**   Furniss, Daniel J. [djfurniss@townsend.com]
**Sent:**   Friday, June 13, 2008 6:38 PM
**To:**     Yungwirth, Matthew S.
**Cc:**     Tadlock, Robert D.
**Subject:** Cisco Documents

I have reviewed your letter of this date to Robert Tadlock. The January letter applied ONLY to the documents produced in January and was done solely to keep from causing the cancellation of depositions in Sydney. There is no other agreement and I take exception to the implication that there is any continuing agreement. If Cisco wishes to bring a motion to modify the Protective Order, we will give you ten days to do so. These documents are directly relevant to the '069 litigation and there is no basis for any greater protection than that afforded by the existing Protective Order. I am available to meet and confer if you wish.


```
Daniel J. Furniss
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
(650) 326-2400 Telephone
(650) 326-2422 Fax
djfurniss@townsend.com
www.townsend.com
Offices in:
Denver | Palo Alto | San Francisco | Seattle | Walnut Creek
```

```
This message may contain confidential information. If you are not
the intended recipient and received this in error, any use, or distribution is
strictly prohibited. Please also notify us immediately by return e-mail, and delete
this message from your computer system. Thank you.
```

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

Palo Alto

379 Lytton Avenue
Palo Alto, California 94301-1431
Tel 650.326.2400
Fax 650.326.2422

Robert D. Tadlock
650.462.5322
rdtadlock@townsend.com

June 6, 2008

*VIA E-MAIL*

Matthew S. Yungwirth
Duane Morris
1180 West Peachtree Street, Suite 700
Atlanta, GA 30309-3448

> Re:    CSIRO v. Toshiba America Information Systems, Inc., et al.
>        U.S. District Court, Eastern District of Texas, Tyler Division,
>        No. 6:06-CV-00550-LED
>        Our Reference No. 021498-003400

Dear Matt:

We have received Cisco's Objections and Responses to CSIRO's Second Subpoena for Production of Documents. We write to address the issues raised therein. As several of the document requests relate to the same subject matter as was requested in CSIRO's February 27, 2006 subpoena, CSIRO requests that Cisco begin a rolling production of any additional documents immediately.

First, Request No. 1 seeks Cisco's due diligence documents relating to the acquisition of Radiata. Cisco responds to Request No. 1 stating that it will produce "documents related to the '069 Patent or the TLA" and objects that CSIRO's request for documents beyond that scope are overbroad and unduly burdensome since they are not relevant to this litigation. Cisco's entire due diligence effort relating to Radiata is discoverable in the ongoing litigation, however, as it is necessary to allow CSIRO to determine how the '069 Patent and the TLA fit into that determination and evaluate their importance. CSIRO is entitled to understand the entire picture of Cisco's decision to acquire Radiata, not just the due diligence efforts specifically relating to the '069 Patent or the TLA.

Cisco also objects that Request No. 1 (and all other Requests) seek confidential documents. Cisco's objection on this ground is moot as CSIRO has provided Cisco with a copy of the Court's Protective Order in this litigation that protects Cisco's confidential information. Cisco must seek a Protective Order from the Court if it intends to withhold documents on the ground that they contain confidential information. Without that, CSIRO does not believe the fact that a document contains confidential information is sufficient grounds for Cisco to withhold it.

TOWNSEND
*and*
TOWNSEND
*. and*
CREW
LLP

June 6, 2008
Page 2

As·such, CSIRO renews its request that Cisco search for and produce all non-privileged documents created in connection with Cisco's due diligence prior to acquiring Radiata.

Second, Request Nos. 2 and 5 seek Cisco's evaluations, valuations, and studies of Radiata or Radiata's tangible and intangible assets prior to acquisition. Cisco has agreed to produce these documents but only if they "disclose the bases on which Cisco decided to acquire Radiata" but again objects to any broader production as overbroad and unduly burdensome on the basis that documents beyond that scope are not relevant. Again, Cisco takes too narrow a view of the information necessary to allow CSIRO to properly pursue its case. To the extent Cisco excludes any evaluations, valuations, or studies that do not explicitly state the bases of why Cisco acquired Radiata then Cisco's limitation is too narrow. All evaluations, valuations, and studies that Cisco generated analyzing Radiata's tangible and intangible assets are discoverable in the ongoing litigation for the same reasons all of the due diligence documents are relevant. CSIRO must have access to Cisco's entire evaluation process with regard to Radiata, not just those documents that specifically identify the bases for Cisco's acquisition, to fully understand the importance of the '069 Patent and the TLA. Please confirm that Cisco is not withholding any responsive documents to this Request on the grounds that those documents do not explicitly recite Cisco's bases for acquiring Radiata.

Third,·Request No. 6 seeks communications between Cisco and Radiata regarding proposal, or negotiations, relating to the Radiata acquisition. Cisco agrees to produce only those communications between Cisco and Radiata "arising out of negotiations to purchase Radiata and that relate to/or the value of any licenses of patents and/or other intellectual property to which Radiata is a party" again objecting that documents outside of that scope are not relevant. Here again CSIRO requires the ability to have a full understanding of Cisco's acquisition in order to properly understand the role that the '069 patent and the TLA played in that decision. As with the other Requests, this information is relevant to the damages in CSIRO's ongoing litigation. CSIRO requests that Cisco produce documents responsive to Request No. 6 without any additional limitation.

Fourth, Cisco has not agreed to produce documents in response to Request for Production Nos. 13-18.· Cisco first objects that it is unduly burdensome to seek the requested documents from Cisco that could be as easily obtained form parties to the litigation. These Requests seek documents that are unique to Cisco, in its possession only (e.g., documents analyzing or discussing any agreements with Intel, communications among Cisco employees, schedules, meeting minutes, or reports), and would not be maintained by any other party including those in this litigation. As such CSIRO cannot obtain these documents from any other party.

Cisco also objects that the requested documents are not discoverable and asks that CSIRO "provide[] to Cisco a reasonable explanation as to why other agreements [than the TLA]

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

are relevant to the issues in the above-styled action and address its other bases for objection, Cisco will reconsider its response." With regard to Cisco's other bases for objection see above.

As to relevance, several Intel documents describe a "gentlemen's agreement" between Cisco and Intel to divide the wireless market to avoid competition with each other such that Cisco would exit the NIC business and Intel would exit the Access Point business. The documents indicate that Cisco and Intel subsequently agreed to work together extensively to compete against other sellers of wireless equipment. As we have explained to Intel, documents reflecting any such agreements are relevant to CSIRO's claims against Intel for at least the reasons discussed below.

First, any negotiations, discussions, or agreement between Intel and Cisco regarding the 802.11 wireless market, and all facts surrounding such an agreement, are at the very least reasonably calculated to lead to the discovery of admissible evidence regarding the value to Intel of using CSIRO's invention. As you know, the value of the invention to an alleged infringer is a Georgia-Pacific factor in determining a reasonable royalty. At the time of the negotiations and apparent "gentleman's agreement," Intel and Cisco were setting strategy regarding the IEEE 802.11 committee, developing plans to invest in wireless infrastructure, planning enormous investments in wireless brands (in Intel's case) and interoperability certification programs (in Cisco's case). Wireless speed, the benefits of 802.11a and 802.11g compliant products, the presence or absence of non-infringing alternative technologies and the size of the respective markets and available margins are likely to be analyzed and discussed in the documents and other discovery we are seeking.

Second, the mere fact that Intel and Cisco (two giants of this industry) would see a need to divide up the market for these products rather than competing against each other is highly relevant to the value of the invention. Whether this agreement were part of any kind of lawful "joint venture" or an illegal market allocation, it reflects the size of the opportunity that these two companies must have recognized. If it were not expected to be an enormous market, there would have been no reason or incentive for either company to cede part of it to the other. The fact that this agreement may also have involved legal risk only adds to the relevance and the perceived opportunity.

Similarly, Intel has relied on CSIRO's alleged RAND commitment and its license to Radiata as a defense to damages. If such a RAND commitment is applicable (which CSIRO disputes), CSIRO will show that the circumstances under which Radiata licensed the technology, and the scope of the agreement, are highly distinct from any circumstances that prevailed at the time of any hypothetical RAND negotiation. Accordingly, CSIRO would not violate the purported "non-discrimination" obligation by distinguishing between the Radiata license and terms it would offer to any member of the 802.11a IEEE group. The "gentleman's agreement" between Intel and Cisco, or any such collaboration, shows the technical and marketing resources

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

June 6, 2008
Page 4

being brought to bear on the invention, the likelihood that sufficient infrastructure would allow the invention to flourish and the shared commitment of two of the relevant industry's strongest participants to make the invention functional and saleable. These facts are important to show the different prevailing circumstances between when CSIRO offered a license to Radiata and when any negotiation between CSIRO and Intel would have occurred.

Third, Intel has asserted that CSIRO has acted with "unclean hands" and raised this as an equitable defense to injunction. Presumably this relates to CSIRO's alleged RAND obligations. Any agreement or discussions with Cisco likely related in part to the ongoing standards development and Cisco's and Intel's respective positions on the committee's work. Cisco and Intel may have discussed the significance of any RAND commitments, or the applicability to the standard of particular patents. Beyond the relevance of such analysis or discussion, Intel is unlikely to successfully rely on unclean hands if it has engaged in an unlawful market allocation with Cisco regarding the very products at issue.

Fourth, CSIRO also seeks discovery as to the details of Intel's agreement with Cisco as they are relevant to Intel's allegations that CSIRO "has licensed" numerous parties. Given Intel's on-going collaboration with Cisco, it is highly unlikely that Intel was unaware that there were no such numerous licenses. We believe Intel is aware that these allegations are false. We are entitled to fully explore Intel's knowledge of the Radiata agreement and Cisco's conduct with regard to that license.

Finally, Intel and its co-defendants have argued the fact that "other parties have not licensed" the '069 patent as evidence that either the patent is invalid or not infringed, and/or that CSIRO's requested royalty rates are unreasonable. It now appears that, at least one other major market actor, Cisco, may have been acting in concert with Intel in refusing to license CSIRO's patent. Moreover, we believe Intel may have taken actions to enlist others in a joint refusal to license the '069 patent even after the court has found the patent valid and infringed. We know that Intel and Cisco were two of the founding members of the so-called "common interest group." We believe the evidence of Intel's "gentlemen's agreement" with Cisco raises serious questions as to the legitimacy of the CIG as a whole and the defendants' claims of the joint defense privilege.

Finally, with regard to Request No. 22, the "DMT50 chip" is the name of the Radiata Chip at the time Cisco acquired Radiata. The phrase "any derivatives thereof" is intended to include any Cisco chip that incorporates, or was based on, the DMT50. As examples, derivatives of the DMT50 would include the RM11a and Richfield chips that Fred Anderson testified about during his deposition.

Also, CSIRO intends to treat the documents Cisco produced on May 19, 2008 under the Protective Order as stated, without the modifications. The letter agreement between Cisco,

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

June 6, 2008
Page 5

CSIRO and the Joint Defense Group ("JDG") dated January 25, 2008 applied only to Cisco's February 11, 2008 document production but does not apply to Cisco's recent production. Please notify us by next Friday, June 13, 2008 if Cisco objects.

Sincerely,

Townsend and Townsend and Crew LLP

Robert D. Tadlock

RDT/rdt

61385806 v1

PS|Ship - FedEx Label                                                                                    Page 2 of 2



**package id**
0068582
**ship date**
Thu, Jun 26
**to**
Eric Benisek
Vasquez Benisek &
   Lindgren, LLP
3685 Diablo Blvd., Suite
   300
Lafayette , CA  94549  US
404-253-6983
**residential address**
No
**return label**
No

**notification type**
Delivery
**notification recipients**
jcdaley@duanemorris.com

**from**
Jill Daley  (5000)
Duane Morris LLP
1180 West Peachtree
   Street
Suite 700
Atlanta , GA  30309  US
404.253.6983
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Jill Daley
404-253-6983
jcdaley@duanemorris.com
**create time**
06/26/08, 2:41PM

**vendor**
FedEx
**tracking number**
791094306015
**service**
FedEx Standard Overnight
**packaging**
FedEx Envelope
**courtesy quote**
   11.56
The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.

**Legal Terms and Conditions**
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your
shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim
in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or
misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.
Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic
value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct,
incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot
exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable
instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable
FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions,
including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the
recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and
conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-
800-463-3339).
         ©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
         Other product and company names listed are trademarks or trade names of their respective companies.

PS|Ship - FedEx Label                                      Page 2 of 2



**package id**
0068583
**ship date**
Thu, Jun 26
**to**
Dan Furniss
Townsend & Townsend &
Crew, LLP
379 Lytton Ave
Palo Alto , CA  94301-
1479  US
404-253-6983
**residential address**
No
**return label**
No

**notification type**
Delivery
**notification recipients**
jcdaley@duanemorris.com

**from**
Jill Daley (5000)
Duane Morris LLP
1180 West Peachtree
Street
Suite 700
Atlanta , GA  30309  US
404.253.6983
**billing**
CISCO SYSTEMS, INC.-V.
COMMONWEALTH
SCIENTIFIC
(E4720-00003)
**operator**
Jill Daley
404-253-6983
jcdaley@duanemorris.com
**create time**
06/26/08, 2:43PM

**vendor**
FedEx
**tracking number**
798969047552
**service**
FedEx Standard Overnight
**packaging**
FedEx Envelope
**courtesy quote**
11.56
*The courtesy quote does not
reflect fuel surcharge and does
not necessarily reflect all
accessorial charges.*

*Legal Terms and Conditions*
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your
shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim
in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or
misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.
Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic
value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct,
incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot
exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable
instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable
FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions,
including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the
recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and
conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-
800-463-3339).
©2003-2008 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

July 11, 2008

*Via E-Mail (Without Enclosures)*
*And Federal Express*

Jeff Lindgren, Esq.
Vasquez Benisek & Lindgren, LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549

Dan Furniss, Esq.
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

> Re:  *CSIRO v. Toshiba, et al.*;
>       Subpoenas Issued to Cisco Systems, Inc.

Dear Jeff and Dan:

This letter is to confirm certain agreements reached during our meet-and-confer today related to the confidentiality designation dispute between Cisco and CSIRO. First, we agreed to revise the draft protective order that was circulated earlier this week so that it is along the lines of the Agreed Protective Order entered by Judge Davis with an addendum, both of which would be filed in the Northern District of California. The addendum is to contain Cisco's proposed provision regarding the "outside counsel's eyes only" designation and other changes that Cisco believes are necessary to protect its information. I hope to circulate that revised draft protective order and addendum early next week.

We also agreed that Cisco shall have two weeks to either reach an agreement with CSIRO and the Joint Defense Group regarding the scope of the order and addendum or file a motion for entry of a protective order. With that in mind, CSIRO and the Joint Defense Group agree to maintain Cisco's documents according to the terms of the January 25 Letter Agreement, (including the "outside counsel's eyes only" designation allowed under that agreement) until the later of July 25, 2008 or the date the Court enters an order, agreed or otherwise, resolving the confidentiality designation dispute. Based on that agreement, Cisco agreed to produce the

DuaneMorris

Jeff Lindgren, Esq.
Dan Furniss, Esq.
July 11, 2008
Page 2

documents that it designated as "outside counsel's eyes only" and withheld from its June 26 document production. Those documents are enclosed.

Also, to avoid any confusion, this is to confirm that Cisco's document production is on-going and Cisco expects to produce additional documents on or before July 31, 2008 and possibly additional documents following the resolution of other discovery disputes between Cisco and CSIRO.

Finally, CSIRO confirmed that it does not intend to take the deposition of Bill Rossi until after it resolves its remaining discovery disputes with Cisco. With that in mind, we request that the Joint Defense Group refrain from taking the deposition of Dave Leonard until the middle of August so that Cisco and CSIRO have a chance to resolve their remaining discovery issues and the Rossi and Leonard depositions may be scheduled during the same week. Please let us know if that is possible.

If this does not reflect the terms of our agreement, please let me know immediately.

Sincerely,

Matthew Yungwirth

Enclosure

cc:    Woody Jameson

DuaneMorris°

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
PERSONAL FAX: 404.759.2353
*E-MAIL:* msyungwirth@duanemorris.com

*www.duanemorris.com*

August 1, 2008

**VIA FEDERAL EXPRESS**

Eric Benisek
Vasquez Benisek & Lindgren LLP
3685 Diablo Blvd., Suite 300
Lafayette, CA 94549

Daniel J. Furniss
Townsend & Townsend & Crew LLP
379 Lytton Avenue
Palo Alto CA 94301

    Re:   *CSIRO v. Toshiba, et al.;*
          <u>Subpoena Issued to Cisco Systems, Inc.</u>

Dear Eric and Dan:

        We have enclosed with this letter additional documents that are being produced by Cisco
Systems, Inc. ("Cisco") in response to the subpoenas issued by the United States District Court
for the Northern District of California in connection with Civil Action Nos. 6:06-cv-00549, -
000550 and -00551. These documents are Bates labeled CS00014272 – CS00020121. Please
note that some of the documents are designated "Outside Counsel's Eyes Only," "Attorney's
Eyes Only" and "Confidential" pursuant to the January 25, 2008 Letter Agreement.

        Feel free to call me if you have any questions regarding Cisco's production.

                                    Very truly yours,

                                    Matthew S. Yungwirth

MSY/jcd
Enclosures
cc:      Woody Jameson, Esq. (without enclosure)

Declaration of Matthew S. Yungwirth

Exhibit 4

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
PERSONAL FAX: 404.759.2353
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

January 25, 2008

*VIA E-MAIL (dfurniss@townsend.com and*
*ebenisek@mmblaw.com), CONFIRMATION*
*VIA U.S. MAIL*

Daniel Furniss
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

Eric Benisek
Morgan Miller Blair
1331 North California Boulevard, Suite 200
Walnut Creek, CA 94596

> Re:    *CSIRO v. Toshiba, et al.;*
>        **Subpoena Issued to Cisco Systems, Inc.**

Gentlemen:

This confirms the agreement between third-party Cisco Systems, Inc. ("Cisco"), plaintiff Commonwealth Scientific and Industrial Research Organization ("CSIRO"), and the Joint Defense Group ("JDG") regarding the production of certain highly-confidential documents of Cisco in response to a Subpoena issued out of the Northern District of California in connection with Case No. 6:06-CV-550 before Judge Leonard Davis in the Federal District Court, Eastern District of Texas ("Action"). The points of the agreement are as follows:

- Cisco shall produce its documents pursuant to the terms of the Agreed Protective Order entered in the Action, except as provided herein.

- Cisco shall be entitled to mark its highly-confidential documents as "Outside Counsel's Eyes Only." With respect to the documents that are marked as "Outside Counsel's Eyes Only," CSIRO and the JDG shall treat and handle those documents in conformance with the "attorneys' eyes only" designation under the Agreed Protective Order, except that any such designated documents (or substance thereof) shall not be shown or disclosed to in-house counsel for CSIRO or the JDG parties.

---

DUANE MORRIS LLP

1180 WEST PEACHTREE STREET, SUITE 700   ATLANTA, GA 30309-3448        PHONE: 404.253.6900  FAX: 404.253.6901

DuaneMorris

Messrs. Furniss and Benisek
January 25, 2008
Page 2

- Likewise, Cisco shall be entitled to designate any deposition testimony regarding such documents as "Outside Counsel's Eyes Only."

- If CSIRO or any of the JDG parties object to Cisco's use of the Outside Counsel's Eyes' Only designation with respect to any documents produced by Cisco or deposition testimony regarding those documents, that party shall provide written notice to Cisco identifying the document by its Bates number or transcript by its page number and providing a brief explanation for why the party contends that the document or testimony should not be designated as Outside Counsel's Eyes Only.

- Upon receipt of the foregoing notice, Cisco shall then have twenty days to re-designate the document or transcript, or move the appropriate court for a protective order to maintain the Outside Counsel's Eyes Only designation and protect against the disclosure of the identified documents and/or testimony to other individuals who are not outside counsel to CSIRO and/or the JDG parties. Cisco shall be permitted to re-designate the document or transcript with respect to disclosure by specific parties or all of the parties, as it sees fit.

- Until such motion for protective order is judicially resolved, CSIRO and the JDG parties shall continue to treat the document pursuant to the Outside Counsel's Eyes Only designation.

Please confirm your agreement to these terms by signing below and returning an executed copy to me. In the meantime, please give me a call if you have any questions.

Sincerely,

Matthew Yungwirth

On behalf of CSIRO
Townsend & Townsend & Crew, LLP
By Daniel Furniss

Date 1/30/08

On behalf of the JDG Parties
Morgan Miller Blair
By Eric Benisek

Date

DuaneMorris

Messrs. Furniss and Benisek
January 25, 2008
Page 2

- Likewise, Cisco shall be entitled to designate any deposition testimony regarding such documents as "Outside Counsel's Eyes Only."

- If CSIRO or any of the JDG parties object to Cisco's use of the Outside Counsel's Eyes' Only designation with respect to any documents produced by Cisco or deposition testimony regarding those documents, that party shall provide written notice to Cisco identifying the document by its Bates number or transcript by its page number and providing a brief explanation for why the party contends that the document or testimony should not be designated as Outside Counsel's Eyes Only.

- Upon receipt of the foregoing notice, Cisco shall then have twenty days to re-designate the document or transcript, or move the appropriate court for a protective order to maintain the Outside Counsel's Eyes Only designation and protect against the disclosure of the identified documents and/or testimony to other individuals who are not outside counsel to CSIRO and/or the JDG parties. Cisco shall be permitted to re-designate the document or transcript with respect to disclosure by specific parties or all of the parties, as it sees fit.

- Until such motion for protective order is judicially resolved, CSIRO and the JDG parties shall continue to treat the document pursuant to the Outside Counsel's Eyes Only designation.

Please confirm your agreement to these terms by signing below and returning an executed copy to me. In the meantime, please give me a call if you have any questions.

Sincerely,

Matthew Yungwirth

On behalf of CSIRO
Townsend & Townsend & Crew, LLP
By Daniel Furniss

Date

On behalf of the JDG Parties
Morgan Miller Blair
By Eric Benisek

1/25/08
Date

DuaneMorris

Messrs. Furniss and Benisek
January 25, 2008
Page 3


cc:    Woody Jameson

# Declaration of Matthew S. Yungwirth

## Exhibit 5



**MorganMillerBlair**
A LAW CORPORATION

1331 NORTH CALIFORNIA BOULEVARD, SUITE 200  WALNUT CREEK, CALIFORNIA 94596-4544
925.937.3600    925.943.1106 FAX    www.mmblaw.com

ERIC W. BENISEK
ebenisek@mmblaw.com
(925) 979-3382

October 19, 2007

**VIA EMAIL**

L. Norwood Jameson, Esq.                    Matthew S. Yungwirth
Duane Morris, LLP                           Duane Morris, LLP
Atlantic Center Plaza                       Atlantic Center Plaza
1180 West Peachtree Street, Suite 700       1180 West Peachtree Street, Suite 700
Atlanta, GA  30309-3448                     Atlanta, GA  30309-3448

Re:  *CSIRO v. Toshiba, et al.*;
     **Notice of Deposition of David Skellern**
     Our File No. 7269-019

Gentlemen:

This confirms the agreement between third party Cisco Systems, Inc. ("Cisco"), plaintiff Commonwealth Scientific and Research Organization ("CSIRO"), and the Joint Defense Group ("JDG") regarding the deposition of David Skellern in the combined actions Case Nos. 6:06-CV-549, -550 and -551 before Judge Leonard Davis in the Federal District Court, Eastern District of Texas (the "Action").  The points of the agreement are as follows:

- Counsel for Cisco/Radiata is authorized to participate in the Skellern deposition proceedings for the limited purpose of protecting the privileged and confidential information of Cisco and Radiata, and Cisco will join the existing protective order;

- Until the end-of-business (PST) **November 1, 2007**, the entire transcript of the Skellern deposition shall be treated as "attorneys' eyes only" under the Agreed Protective Order, except that the transcript shall not be permitted to be disclosed to in-house counsel for CSIRO or the JDG parties.  This treatment shall be identified as the "outside counsel's eyes' only designation."

- By the end-of-business (PST) **November 1, 2007**, Cisco shall identify the portion of the Skellern deposition testimony that Cisco does not contend raises an issue with respect to Cisco's and/or Radiata's confidential information that was disclosed by Skellern during the deposition.  Those portions of the transcript identified by Cisco as not being at issue may be designated, as appropriate, by CSIRO and/or the JDG under the Agreed Protective Order and disclosed accordingly.  The remaining portions that Cisco/Radiata believes may require the heightened confidentiality treatment of an

L. Norwood Jameson, Esq.
Matthew S. Yungwirth, Esq.
October 19, 2007
Page 2

outside counsel's eyes' only designation shall remain treated under the outside
counsel's eyes' only designation.

- By **November 7, 2007**, if necessary, Cisco/Radiata shall designate the remaining
  portions of the Skellern deposition transcript according to the terms of the Agreed
  Protective Order and/or shall file any motion on agreed shortened notice before Judge
  Davis to amend the parties' existing Agreed Protective Order to address Cisco's
  and/or Radiata's concerns with respect to testimony that they contend should be
  treated according to an outside counsel's eyes' only designation. While any such
  motion filed by Cisco/Radiata remains pending, the testimony at issue shall continue
  to be treated according to the outside counsel's eyes' only designation.

Very truly yours,

MORGAN MILLER BLAIR

ERIC W. BENISEK

EWB

cc:    Joint Defense Group (via e-mail)

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

February 6, 2008

*VIA E-MAIL (dlevy@morganlewis.com and dfurniss@townsend.com),*
*CONFIRMATION VIA U.S. MAIL*

Mr. David Levy
Morgan Lewis
1000 Louisiana Street
Suite 1300
Houston, TX 77002

Mr. Dan Furniss
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

Re:    Notice of Deposition of Dr. John O' Sullivan

Dear David and Dan:

As you are aware, Duane Morris, LLP represents Cisco Systems, Inc. ("Cisco") with respect to the depositions of its ex-employees that are noticed in Civil Action Nos. 6:06-cv-00549, 6:06-cv-00550 and 6:06-cv-00551. In connection with the deposition of Dr. David Skellern, whose deposition also was noticed by your firm, we asked for the courtesy of advance notice of the depositions of all ex-Cisco employees so that we could have an opportunity to protect the confidential and privileged information of Cisco and its related company, Radiata. Following the deposition of Dr. Skellern, we thought an agreement had been reached and that advance notice would be forthcoming if any other depositions of ex-Cisco employees were noticed.

Unfortunately, we learned last evening at 4:00 pm that counsel for certain members of the Joint Defense Group again noticed the deposition of an ex-Cisco employee, Dr. John O'Sullivan, without providing any notice to us. The notice of Dr. O'Sullivan's deposition is dated December 24, 2007, yet we only received notice yesterday by happenstance. We are very disappointed that we did not receive any notice of this deposition at any time during the six week period between the time the deposition was noticed and the date it was scheduled to take place.

DuaneMorris

Mr. David Levy
Mr. Dan Furniss
February 6, 2008
Page 2

As you are aware, Dr. O'Sullivan worked for Cisco's Wireless Networking Business Unit following Cisco's acquisition of Radiata in 2001; and before joining Cisco, Dr. O'Sullivan was an officer of Radiata. During Dr. O'Sullivan's employment with Cisco and Radiata, he was privy to Cisco's and Radiata's confidential information and involved in conversations protected by the attorney-client privilege. Based on our review of the notice of Dr. O'Sullivan's deposition, we believe that Cisco's and Radiata's confidential and privileged information may be the subject of inquiry at the deposition. With respect to any privileged information, the privilege rests within the control of Cisco/Radiata. We, therefore, will have to attend the deposition to protect Cisco's and/or Radiata's privileged information, and we will make arrangements with Townsend & Townsend & Crew to do so.

With respect to anticipated disclosure of confidential information, this letter is also to notify the parties that noticed Dr. O'Sullivan's deposition that Cisco objects to all topics of inquiry and requests for documents that may require Dr. O'Sullivan to disclose any confidential information of Cisco and/or Radiata, unless CSIRO and the Joint Defense Group agree to protect such information along the lines of the letter agreement that was the subject of the letters we exchanged with you and Eric Benisek on October 11 and 18, 2007 with respect to Dr. Skellern's deposition. In other words, we propose that the Joint Defense Group and CSIRO agree to handle the O'Sullivan deposition as follows:

- Counsel for Cisco/Radiata is authorized to participate in the O'Sullivan deposition proceedings for the limited purpose of protecting the privileged and confidential information of Cisco and Radiata;

- Until the end-of-business (PST) February 15, 2008, the entire transcript of the O'Sullivan deposition and Cisco/Radiata documents produced in connection therewith shall be treated as "attorneys' eyes only" under the Agreed Protective Order, except that the transcript and documents shall not be permitted to be disclosed to in-house counsel for CSIRO or the Joint Defense Group. This treatment shall be identified as the "outside counsel's eyes' only designation."

- By the end-of-business (PST) February 15, 2008, Cisco shall identify the portion of the O'Sullivan deposition testimony and documents that Cisco does not contend raises an issue with respect to Cisco's and/or Radiata's confidential information that was disclosed by O'Sullivan during the deposition. Those portions of the transcript and documents identified by Cisco as not being at issue may be designated, as appropriate, by CSIRO and/or the Joint Defense Group under the Agreed Protective Order and disclosed accordingly. The remaining portions that Cisco/Radiata believes may require the heightened confidentiality treatment of an outside counsel's eyes'

DuaneMorris

Mr. David Levy
Mr. Dan Furniss
February 6, 2008
Page 3

only designation shall remain treated under the outside counsel's eyes' only
designation.

- By February 29, 2008, if necessary, Cisco/Radiata shall designate the remaining
  portions of the O'Sullivan deposition transcript and documents according to the terms
  of the Agreed Protective Order and/or shall file any motion on agreed shortened
  notice before Judge Davis to amend the parties' existing Agreed Protective Order to
  address Cisco's and/or Radiata's concerns with respect to testimony that they contend
  should be treated according to an outside counsel's eyes' only designation. While any
  such motion filed by Cisco/Radiata remains pending, the testimony and documents at
  issue shall continue to be treated according to the outside counsel's eyes' only
  designation.

Please confirm on behalf of the Joint Defense Group and CSIRO, respectively, by the
close of business today that the foregoing terms will apply to the handling of transcript of the
deposition of Dr. O'Sullivan. We look forward to hearing from you soon.

Sincerely,

Matthew Yungwirth

cc:    Rich Vasquez (*via email rvasquez@mmblaw.com*)
       Eric Benisek (*via email ebenisek@mmblaw.com*)
       Barry Shelton (*via email shelton@fr.com*)
       Leo Lam (*via email llam@kvn.com*)
       Woody Jameson
       Matthew Gaudet

**Yungwirth, Matthew S.**

| | |
|---|---|
| **From:** | Rich Vasquez [RVasquez@mmblaw.com] |
| **Sent:** | Wednesday, February 06, 2008 5:59 PM |
| **To:** | Ellerby, Belinda K.; Jameson, Woody; Gaudet, Matthew C.; dlevy@morganlewis.com; dfurniss@townsend.com; Eric Benisek; shelton@fr.com; llam@kvn.com |
| **Cc:** | Yungwirth, Matthew S. |
| **Subject:** | RE: Cisco/CISRO: Notice of Deposition of Dr. John O'Sullivan |

Matt and Woody:

We are starting at 9:30 a.m. tomorrow.

I just polled the defendants and Furniss and everyone agrees we can agree to the AEO stipulation to which you refer in your attached letter.

See you tomorrow.

Regards,

Rich

**From:** Ellerby, Belinda K. [mailto:BKEllerby@duanemorris.com]
**Sent:** Wednesday, February 06, 2008 11:11 AM
**To:** Jameson, Woody; Gaudet, Matthew C.; dlevy@morganlewis.com; dfurniss@townsend.com; Rich Vasquez; Eric Benisek; shelton@fr.com; llam@kvn.com
**Cc:** Yungwirth, Matthew S.
**Subject:** Cisco/CISRO: Notice of Deposition of Dr. John O'Sullivan

Matt Yungwirth requested that I forward you the attached correspondence regarding the above.


Belinda K. Ellerby, PP, PLS
Legal Assistant

**Duane Morris LLP**
Atlantic Center Plaza
1180 West Peachtree Street NW, Suite 700
Atlanta, GA 30309-3448
P: 404.253.6906 F: 404.253.6901
BKEllerby@duanemorris.com
www.duanemorris.com


Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

April 22, 2008

VIA E-MAIL (shelton@fr.com and
djfurniss@townsend.com), CONFIRMATION
VIA U.S. MAIL

Mr. Barry Shelton
Fish & Richardson P.C.
111 Congress Avenue, Suite 810
Austin, Texas 78701

Mr. Dan Furniss
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

Re:    Confidentiality Designations for Deposition of Dr. Andrew Myles

Dear Barry and Dan:

This letter is to identify Cisco Systems, Inc.'s ("Cisco") confidentiality designations for the March 15, 2008 deposition of Dr. Andrew Myles. Pursuant to Cisco's January 25, 2008 Letter Agreement with the Defendants and CSIRO, Cisco designates the following portions of the transcript as "outside counsel's eyes only": 205:5-210:8; 211:2-214:1; 216:8-217:9; and 218:6-221:2. Likewise, pursuant to the Agreed Protective Order entered in the underlying action between the Defendants and CSIRO, Cisco designates the following portions of the transcript as "confidential": 152:5-24 and 166:9-13; and the following portions of the transcript as "attorneys' eyes only": 153:2-11; 160:20-161:7; 163:1; 163:14-25; 164:13-20; and 178:2-13. If CSIRO and/or any of the Defendants intend to designate as confidential any of the deposition transcript, please let us know as soon as possible. If we do not receive any confidentiality designations from CSIRO or the Defendants by May 1, 2008, we will assume that they do not intend to make any such designations.

Finally, during Dr. Myles's deposition, we learned for the first time that CSIRO produced a document Bates-labeled CSI0001100-CSI0001110. That document has been marked as Exhibit 943. This letter is to confirm that Exhibit 943 contains Cisco's confidential and

**DuaneMorris**

Mr. Barry Shelton
Mr. Dan Furniss
April 22, 2008
Page 2

proprietary information and should be designated as "attorneys' eyes only," as I indicated during the deposition.

    If you have any questions regarding these matters, feel free to give me a call.

        Sincerely,

        Matthew Yungwirth

cc:    Conor Civins (*via email civins@fr.com*)
       Eric Benisek (*via email ebenisek@mmblaw.com*)
       Woody Jameson

$$\underline{\text{Duane}}\underline{\text{Morris}}\text{°}$$

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

June 27, 2008

*VIA E-MAIL (rvasquez@vbllaw.com and
rdtadlock@townsend.com), CONFIRMATION
VIA U.S. MAIL*

Robert Tadlock
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

Richard Vasquez
Vasquez Benisek & Lindgren LLP
3685 Mt. Diablo Blvd., Ste 300
Lafayette, CA 94549

Re:    **Confidentiality Designations for Deposition of Fred Anderson**

Dear Rich and Rob:

This letter is to identify Cisco Systems, Inc.'s ("Cisco") confidentiality designations for the May 15, 2008 deposition of Fred Anderson. Pursuant to Cisco's January 25, 2008 Letter Agreement with the Defendants and CSIRO and its related agreements regarding the designation of deposition testimony, Cisco designates the following portions of the transcript as "outside counsel's eyes only":

125:21-126:9; 127:1-13; 157:2-158:21; 158:25-161:11 and 163:5-167:10.

Likewise, pursuant to the Agreed Protective Order entered in the underlying action between the Defendants and CSIRO, Cisco designates the following portions of the transcript as "confidential":

1:13-14; 77:23-79:7; 80:5-81:4; 81:14-86:23; 87:21-88:5; 90:3-11; 94:10-95:11; 95:14-96:1; 96:23-97:17; 98:21-99:14; 106:6-108:8; 112:2-21; 113:3-18; 118:17-120:16; 127:14-17; 128:13-129:5; 133:16-18; 134:18-137:18; 137:24-138:3; 139:20-140:8; 140:11-21; 141:14-142:1; 143:6-144:3; 171:7-16; 174:11-181:22; 192:7-193:7; 195:7-

DuaneMorris

Robert Tadlock
Richard Vasquez
June 27, 2008
Page 2


196:11; 197:8-18; 200:9-11; 202:13-16; 205:1-206:13; 213:16-22; 217:10-18; 217:22-218:6; and 228:24-229:11

and the following portions of the transcript as "attorneys' eyes only":

59:14-60:14; 60:20-61:3; 90:15-93:4; 93:6-93:22; 96:2-96:18; 99:15-105:5; 108:13-110:4; 110:14-111:20; 120:25-125:20; 126:10-25; 129:6-133:15; 133:19-134:14; 146:12-151:14; 151:21-156:15; 162:4-163:1; 170:5-14; 170:18-24; 172:2-17; 172:25-173:5; 181:23-183:4; 185:3-186:1; 187:19-189:2; 198:2-200:8; 200:12-202:12; 202:17-203:24; 206:14-208:16; and 224:18-226:1.

If CSIRO and/or any of the Defendants intend to designate as confidential any of the deposition transcript, please let us know as soon as possible. If we do not receive any confidentiality designations from CSIRO or the Defendants by July 11, we will assume that they do not intend to make any such designations.

If you have any questions regarding these matters, feel free to give me a call.

Sincerely,

Matthew Yungwirth


cc:    Woody Jameson

Declaration of Matthew S. Yungwirth

Exhibit 6

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

Palo Alto

379 Lytton Avenue
Palo Alto, California 94301-1431
Tel 650.326.2400
Fax 650.326.2422

Robert D. Tadlock
650.462.5322
rdtadlock@townsend.com

June 6, 2008

*VIA E-MAIL*

Matthew S. Yungwirth
Duane Morris
1180 West Peachtree Street, Suite 700
Atlanta, GA 30309-3448

> Re:    CSIRO v. Toshiba America Information Systems, Inc., et al.
> U.S. District Court, Eastern District of Texas, Tyler Division,
> No. 6:06-CV-00550-LED
> Our Reference No. 021498-003400

Dear Matt:

We have received Cisco's Objections and Responses to CSIRO's Second Subpoena for Production of Documents. We write to address the issues raised therein. As several of the document requests relate to the same subject matter as was requested in CSIRO's February 27, 2006 subpoena, CSIRO requests that Cisco begin a rolling production of any additional documents immediately.

First, Request No. 1 seeks Cisco's due diligence documents relating to the acquisition of Radiata. Cisco responds to Request No. 1 stating that it will produce "documents related to the '069 Patent or the TLA" and objects that CSIRO's request for documents beyond that scope are overbroad and unduly burdensome since they are not relevant to this litigation. Cisco's entire due diligence effort relating to Radiata is discoverable in the ongoing litigation, however, as it is necessary to allow CSIRO to determine how the '069 Patent and the TLA fit into that determination and evaluate their importance. CSIRO is entitled to understand the entire picture of Cisco's decision to acquire Radiata, not just the due diligence efforts specifically relating to the '069 Patent or the TLA.

Cisco also objects that Request No. 1 (and all other Requests) seek confidential documents. Cisco's objection on this ground is moot as CSIRO has provided Cisco with a copy of the Court's Protective Order in this litigation that protects Cisco's confidential information. Cisco must seek a Protective Order from the Court if it intends to withhold documents on the ground that they contain confidential information. Without that, CSIRO does not believe the fact that a document contains confidential information is sufficient grounds for Cisco to withhold it.

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

June 6, 2008
Page 2

As such, CSIRO renews its request that Cisco search for and produce all non-privileged documents created in connection with Cisco's due diligence prior to acquiring Radiata.

Second, Request Nos. 2 and 5 seek Cisco's evaluations, valuations, and studies of Radiata or Radiata's tangible and intangible assets prior to acquisition. Cisco has agreed to produce these documents but only if they "disclose the bases on which Cisco decided to acquire Radiata" but again objects to any broader production as overbroad and unduly burdensome on the basis that documents beyond that scope are not relevant. Again, Cisco takes too narrow a view of the information necessary to allow CSIRO to properly pursue its case. To the extent Cisco excludes any evaluations, valuations, or studies that do not explicitly state the bases of why Cisco acquired Radiata then Cisco's limitation is too narrow. All evaluations, valuations, and studies that Cisco generated analyzing Radiata's tangible and intangible assets are discoverable in the ongoing litigation for the same reasons all of the due diligence documents are relevant. CSIRO must have access to Cisco's entire evaluation process with regard to Radiata, not just those documents that specifically identify the bases for Cisco's acquisition, to fully understand the importance of the '069 Patent and the TLA. Please confirm that Cisco is not withholding any responsive documents to this Request on the grounds that those documents do not explicitly recite Cisco's bases for acquiring Radiata.

Third, Request No. 6 seeks communications between Cisco and Radiata regarding proposal, or negotiations, relating to the Radiata acquisition. Cisco agrees to produce only those communications between Cisco and Radiata "arising out of negotiations to purchase Radiata and that relate to the value of any licenses of patents and/or other intellectual property to which Radiata is a party" again objecting that documents outside of that scope are not relevant. Here again CSIRO requires the ability to have a full understanding of Cisco's acquisition in order to properly understand the role that the '069 patent and the TLA played in that decision. As with the other Requests, this information is relevant to the damages in CSIRO's ongoing litigation. CSIRO requests that Cisco produce documents responsive to Request No. 6 without any additional limitation.

Fourth, Cisco has not agreed to produce documents in response to Request for Production Nos. 13-18. Cisco first objects that it is unduly burdensome to seek the requested documents from Cisco that could be as easily obtained form parties to the litigation. These Requests seek documents that are unique to Cisco, in its possession only (e.g., documents analyzing or discussing any agreements with Intel, communications among Cisco employees, schedules, meeting minutes, or reports), and would not be maintained by any other party including those in this litigation. As such CSIRO cannot obtain these documents from any other party.

Cisco also objects that the requested documents are not discoverable and asks that CSIRO "provide[] to Cisco a reasonable explanation as to why other agreements [than the TLA]

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

June 6, 2008
Page 3

are relevant to the issues in the above-styled action and address its other bases for objection, Cisco will reconsider its response." With regard to Cisco's other bases for objection see above.

As to relevance, several Intel documents describe a "gentlemen's agreement" between Cisco and Intel to divide the wireless market to avoid competition with each other such that Cisco would exit the NIC business and Intel would exit the Access Point business. The documents indicate that Cisco and Intel subsequently agreed to work together extensively to compete against other sellers of wireless equipment. As we have explained to Intel, documents reflecting any such agreements are relevant to CSIRO's claims against Intel for at least the reasons discussed below.

First, any negotiations, discussions, or agreement between Intel and Cisco regarding the 802.11 wireless market, and all facts surrounding such an agreement, are at the very least reasonably calculated to lead to the discovery of admissible evidence regarding the value to Intel of using CSIRO's invention. As you know, the value of the invention to an alleged infringer is a Georgia-Pacific factor in determining a reasonable royalty. At the time of the negotiations and apparent "gentleman's agreement," Intel and Cisco were setting strategy regarding the IEEE 802.11 committee, developing plans to invest in wireless infrastructure, planning enormous investments in wireless brands (in Intel's case) and interoperability certification programs (in Cisco's case). Wireless speed, the benefits of 802.11a and 802.11g compliant products, the presence or absence of non-infringing alternative technologies and the size of the respective markets and available margins are likely to be analyzed and discussed in the documents and other discovery we are seeking.

Second, the mere fact that Intel and Cisco (two giants of this industry) would see a need to divide up the market for these products rather than competing against each other is highly relevant to the value of the invention. Whether this agreement were part of any kind of lawful "joint venture" or an illegal market allocation, it reflects the size of the opportunity that these two companies must have recognized. If it were not expected to be an enormous market, there would have been no reason or incentive for either company to cede part of it to the other. The fact that this agreement may also have involved legal risk only adds to the relevance and the perceived opportunity.

Similarly, Intel has relied on CSIRO's alleged RAND commitment and its license to Radiata as a defense to damages. If such a RAND commitment is applicable (which CSIRO disputes), CSIRO will show that the circumstances under which Radiata licensed the technology, and the scope of the agreement, are highly distinct from any circumstances that prevailed at the time of any hypothetical RAND negotiation. Accordingly, CSIRO would not violate the purported "non-discrimination" obligation by distinguishing between the Radiata license and terms it would offer to any member of the 802.11a IEEE group. The "gentleman's agreement" between Intel and Cisco, or any such collaboration, shows the technical and marketing resources

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

June 6, 2008
Page 4

being brought to bear on the invention, the likelihood that sufficient infrastructure would allow the invention to flourish and the shared commitment of two of the relevant industry's strongest participants to make the invention functional and saleable. These facts are important to show the different prevailing circumstances between when CSIRO offered a license to Radiata and when any negotiation between CSIRO and Intel would have occurred.

Third, Intel has asserted that CSIRO has acted with "unclean hands" and raised this as an equitable defense to injunction. Presumably this relates to CSIRO's alleged RAND obligations. Any agreement or discussions with Cisco likely related in part to the ongoing standards development and Cisco's and Intel's respective positions on the committee's work. Cisco and Intel may have discussed the significance of any RAND commitments, or the applicability to the standard of particular patents. Beyond the relevance of such analysis or discussion, Intel is unlikely to successfully rely on unclean hands if it has engaged in an unlawful market allocation with Cisco regarding the very products at issue.

Fourth, CSIRO also seeks discovery as to the details of Intel's agreement with Cisco as they are relevant to Intel's allegations that CSIRO "has licensed" numerous parties. Given Intel's on-going collaboration with Cisco, it is highly unlikely that Intel was unaware that there were no such numerous licenses. We believe Intel is aware that these allegations are false. We are entitled to fully explore Intel's knowledge of the Radiata agreement and Cisco's conduct with regard to that license.

Finally, Intel and its co-defendants have argued the fact that "other parties have not licensed" the '069 patent as evidence that either the patent is invalid or not infringed, and/or that CSIRO's requested royalty rates are unreasonable. It now appears that, at least one other major market actor, Cisco, may have been acting in concert with Intel in refusing to license CSIRO's patent. Moreover, we believe Intel may have taken actions to enlist others in a joint refusal to license the '069 patent even after the court has found the patent valid and infringed. We know that Intel and Cisco were two of the founding members of the so-called "common interest group." We believe the evidence of Intel's "gentlemen's agreement" with Cisco raises serious questions as to the legitimacy of the CIG as a whole and the defendants' claims of the joint defense privilege.

Finally, with regard to Request No. 22, the "DMT50 chip" is the name of the Radiata Chip at the time Cisco acquired Radiata. The phrase "any derivatives thereof" is intended to include any Cisco chip that incorporates, or was based on, the DMT50. As examples, derivatives of the DMT50 would include the RM11a and Richfield chips that Fred Anderson testified about during his deposition.

Also, CSIRO intends to treat the documents Cisco produced on May 19, 2008 under the Protective Order as stated, without the modifications. The letter agreement between Cisco,

TOWNSEND
*and*
TOWNSEND
, *and*
CREW
LLP

June 6, 2008
Page 5

CSIRO and the Joint Defense Group ("JDG") dated January 25, 2008 applied only to Cisco's February 11, 2008 document production but does not apply to Cisco's recent production.  Please notify us by next Friday, June 13, 2008 if Cisco objects.

Sincerely,

Townsend and Townsend and Crew LLP

Robert D. Tadlock

RDT/rdt

61385806 v1

Declaration of Matthew S. Yungwirth

Exhibit 7

**Yungwirth, Matthew S.**

From:      Yungwirth, Matthew S.
Sent:      Friday, August 01, 2008 1:52 PM
To:        Furniss, Daniel J.
Cc:        Jameson, Woody
Subject:   RE: CSIRO

Dan:

This email is to close the loop on our good faith meet and confer of yesterday regarding the confidentiality issue, which we believe was productive. During that call, we confirmed that the disclosure of outside counsel's eyes only information to Mr. Redfern and Mr. Healy, as discussed in sec. 4.3, are the last remaining issues in dispute. We understand CSIRO's position to be that it desires to disclose all outside counsel's eyes only designated documents to Messrs. Redfern and Healy, except purely technical documents. On the other hand, Cisco cannot agree to that proposed blanket disclosure of its "outside counsel's eyes only" designated documents (that also would include business strategy documents and licensing documents, among others) to Messrs. Redfern and Healy based on their responsibilities in the WLAN field that go beyond their involvement in the E.D. Tex. actions. Cisco considers those activities to be competitive decision making.

With that in mind, we came back to the possibility of Cisco identifying what "outside counsel's eyes only" documents it is willing to disclose to Messrs. Redfern and Healy. In an effort to resolve this issue and reach an agreement regarding the proposed order, Cisco offers to disclose to Messrs. Redfern and Healy: (i) the Radiata acquisition merger agreement and acquisition diligence documents that discuss the financial valuation of Radiata; and (ii) the Marvell and ST Micro sublicenses and non-privileged discussions related thereto. Based on our call, I understand that these two categories of documents are of primary concern to CSIRO. And although we believe that Cisco has a strong basis to maintain its objection to disclosing these categories of documents, it is willing to make this concession if that will facilitate an agreement.

Since documents within those categories are not currently segregated from the other outside counsel's eyes only, Cisco will identify the specific documents that it believes fall within these categories so that they can be disclosed. To the extent that you believe any additional documents should be disclosed, we can deal with those documents on a document-by-document basis. Please let us know by Monday afternoon if this proposal solves the remaining issue. If not, we believe we have exhausted the rest of our options for a compromise and we should proceed accordingly.

Thanks,

Matt

Matthew Yungwirth
Duane Morris LLP
1180 West Peachtree St., Suite 700
Atlanta, GA 30309
(t) 404.253.6935
(f) 404.759.2353

From: Furniss, Daniel J. [mailto:djfurniss@townsend.com]
Sent: Wednesday, July 30, 2008 12:35 PM
To: Yungwirth, Matthew S.
Cc: Jameson, Woody

**Subject:** RE: CSIRO

Matt,
The issue as to Healy's participation is critical. CSIRO will not, indeed, cannot agree to any provision that prevents him from continuing to be involved in all matters relating to the '069 patent. The position expressed in your July 24th letter is clear but not acceptable. As I mentioned, under the Texas order, neither Redfern nor Healy see any technical information, which was sufficient for all of the other parties. I am in meetings today, but could discuss by phone tomorrow. Our agreement remains in effect, but we have no ability to determine what documents defendants counsel examine Mr. Redfern on.
Let me know if there is a good time for you tomorrow.
Dan

```
Daniel J. Furniss
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
(650) 326-2400 Telephone
(650) 326-2422 Fax
djfurniss@townsend.com
www.townsend.com
Offices in:
Denver | Palo Alto | San Francisco | Seattle | Walnut Creek
```

This message may contain confidential information. If you are not
the intended recipient and received this in error, any use, or distribution is strictly
prohibited. Please also notify us immediately by return e-mail, and delete this message
from your computer system. Thank you.

Message                                                                                          Page 1 of 2

**Yungwirth, Matthew S.**

From:    Furniss, Daniel J. [djfurniss@townsend.com]
Sent:    Saturday, August 02, 2008 12:39 AM
To:      Yungwirth, Matthew S.
Cc:      Jameson, Woody
Subject: RE: CSIRO

Matt,
This is not acceptable. In light of today's developments, we will be filing our motion to compel as soon as possible.
I always enjoy speaking with you and remain available but I believe we are at an impasse.
Dan

-----Original Message-----
From: Yungwirth, Matthew S. [mailto:MSYungwirth@duanemorris.com]
Sent: Friday, August 01, 2008 10:52 AM
To: Furniss, Daniel J.
Cc: Jameson, Woody
Subject: RE: CSIRO

Dan:

This email is to close the loop on our good faith meet and confer of yesterday regarding the
confidentiality issue, which we believe was productive. During that call, we confirmed that the
disclosure of outside counsel's eyes only information to Mr. Redfern and Mr. Healy, as discussed in
sec. 4.3, are the last remaining issues in dispute. We understand CSIRO's position to be that it
desires to disclose all outside counsel's eyes only designated documents to Messrs. Redfern and
Healy, except purely technical documents. On the other hand, Cisco cannot agree to that proposed
blanket disclosure of its "outside counsel's eyes only" designated documents (that also would
include business strategy documents and licensing documents, among others) to Messrs. Redfern and
Healy based on their responsibilities in the WLAN field that go beyond their involvement in the E.D.
Tex. actions. Cisco considers those activities to be competitive decision making.

With that in mind, we came back to the possibility of Cisco identifying what "outside counsel's eyes
only" documents it is willing to disclose to Messrs. Redfern and Healy. In an effort to resolve this issue
and reach an agreement regarding the proposed order, Cisco offers to disclose to Messrs. Redfern
and Healy: (i) the Radiata acquisition merger agreement and acquisition diligence documents that
discuss the financial valuation of Radiata; and (ii) the Marvell and ST Micro sublicenses and non-
privileged discussions related thereto. Based on our call, I understand that these two categories of
documents are of primary concern to CSIRO. And although we believe that Cisco has a strong basis
to maintain its objection to disclosing these categories of documents, it is willing to make this
concession if that will facilitate an agreement.

Since documents within those categories are not currently segregated from the other outside counsel's
eyes only, Cisco will identify the specific documents that it believes fall within these categories so that
they can be disclosed. To the extent that you believe any additional documents should be disclosed,
we can deal with those documents on a document-by-document basis. Please let us know by Monday
afternoon if this proposal solves the remaining issue. If not, we believe we have exhausted the rest of
our options for a compromise and we should proceed accordingly.

Thanks,

Matt

Matthew Yungwirth
Duane Morris LLP
1180 West Peachtree St., Suite 700
Atlanta, GA 30309
(t) 404.253.6935
(f) 404.759.2353

**From:** Furniss, Daniel J. [mailto:djfurniss@townsend.com]
**Sent:** Wednesday, July 30, 2008 12:35 PM
**To:** Yungwirth, Matthew S.
**Cc:** Jameson, Woody
**Subject:** RE: CSIRO

Matt,
The issue as to Healy's participation is critical. CSIRO will not, indeed, cannot agree to any provision that prevents him from continuing to be involved in all matters relating to the '069 patent. The position expressed in your July 24th letter is clear but not acceptable. As I mentioned, under the Texas order, neither Redfern nor Healy see any technical information, which was sufficient for all of the other parties. I am in meetings today, but could discuss by phone tomorrow. Our agreement remains in effect, but we have no ability to determine what documents defendants counsel examine Mr. Redfern on.
Let me know if there is a good time for you tomorrow.
Dan

```
Daniel J. Furniss
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
(650) 326-2400 Telephone
(650) 326-2422 Fax
djfurniss@townsend.com
www.townsend.com
Offices in:
Denver | Palo Alto | San Francisco | Seattle | Walnut Creek
This message may contain confidential information. If you are not
the intended recipient and received this in error, any use, or distribution is
strictly prohibited. Please also notify us immediately by return e-mail, and delete
this message from your computer system. Thank you.
```

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

8/4/2008

**Yungwirth, Matthew S.**

| | |
|---|---|
| **From:** | Eric Benisek [ebenisek@vbllaw.com] |
| **Sent:** | Thursday, July 03, 2008 4:18 PM |
| **To:** | Yungwirth, Matthew S. |
| **Subject:** | CSIRO v. Toshiba: Cisco 3d Party Subpoena |
| **Importance:** | High |

Dear Matt,

We have reviewed your June 18, 2008 letter responding to CSIRO's third party subpoena.  The Joint Defense Group ("JDG") will continue to abide the terms of the January 25, 2008 letter allowing Cisco to specially designate documents and/or testimony "Outside Counsel Eyes Only."  It's our understanding that if we disagree with Cisco's designation of certain documents as "Outside Counsel Eyes Only", we will notify Cisco in writing of the documents and/or testimony we deem are incorrectly designated and why we believe such.  Cisco will then have 20 days to either re-designate or move to modify the protective order.

Regards,

Eric (on behalf of the Joint Defense Group)

Eric W. Benisek, Esq.
Vasquez Benisek & Lindgren LLP
ebenisek@vbllaw.com
Direct: (925) 791-2921
Cell: (925) 297-9385

**Yungwirth, Matthew S.**

| | |
|---|---|
| **From:** | Eric Benisek [ebenisek@vbllaw.com] |
| **Sent:** | Monday, August 04, 2008 12:43 PM |
| **To:** | Yungwirth, Matthew S. |
| **Subject:** | CSIRO Litigation: Proposed Protective Order |

Dear Matt,

I've confirmed with the members of the Joint Defense Group that the proposed protective order you forwarded me is acceptable. I've also separately contacted counsel for Buffalo who also confirmed the proposed protective order is acceptable.

Best regards,

Eric

**Eric W. Benisek, Esq.**
Vasquez Benisek & Lindgren LLP
ebenisek@vbllaw.com
Main: (925) 627-4250
Direct: (925) 791-2921
Cell: (925) 297-9385
Fax: (925) 403-0900
3685 Mt. Diablo Blvd., Ste. 300
Lafayette, CA  94549

*This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received this message in error, please advise the sender by reply e-mail to ebenisek@vbllaw.com, and delete the message*

8/4/2008

Declaration of Matthew S. Yungwirth

Exhibit 8

DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

MATTHEW S. YUNGWIRTH
DIRECT DIAL: 404.253.6935
FAX: 404.253.6901
E-MAIL: msyungwirth@duanemorris.com

www.duanemorris.com

July 24, 2008

*Via E-Mail*

Dan Furniss, Esq.
Townsend & Townsend & Crew, LLP
379 Lytton Ave.
Palo Alto, CA 94301-1431

      Re:    *CSIRO v. Toshiba, et al.*;
              **Subpoenas Issued to Cisco Systems, Inc.**

Dear Dan:

        This letter is in response to your email of July 23, 2008 regarding the parties' dispute related to an appropriate confidentiality order.

        We recognize and understand your desire to minimize the differences between the Texas order and the proposed California order. However, we do not think it is possible to leave the Texas order "as is" and incorporate all of the changes in an addendum, without creating a confusing mess that will be difficult, if not impossible, for the court to accept and enforce. In my July 17 email to you, we provided examples of necessary changes that need to be made in the body of the order so that it would make sense. Among other things, the reference to "confidential and attorney's eyes only" throughout the Texas order needs to be changed to reflect the "outside counsel's eyes only" designation or the order will be nonsensical. Nevertheless, if you think it is possible to include the substance of the changes in the addendum without changing the body of the Texas order itself, please provide a draft along the lines you propose. We already have circulated three drafts, and based on your email it appears CSIRO still is not satisfied, yet it has not provided any substantive alternative.

        As for the parameters of the outside counsel's eyes only designation, your email regarding Mr. Healy's on going competitive decision-making highlights the problems with your proposed blanket disclosure of Cisco's highly confidential information to Messrs. Healy and Redfern. Messrs. Healy and Redfern clearly cannot limit their use of Cisco's confidential information to the management of the Texas case (as required by even the Texas order) because they are too intertwined with the '069 Patent (and its foreign counterparts) and CSIRO's efforts to license that patent, including with respect to the dispute between Cisco and CSIRO. Based on

DuaneMorris

Dan Furniss, Esq.
July 24, 2008
Page 2


their involvement in the Texas litigation and their involvement in CSIRO's patent prosecution and/or licensing activities, it is not reasonable to expect them to compartmentalize Cisco's confidential information for use in the Texas litigation, but not in their other activities related to the wireless LAN field.

The only way to truly protect Cisco's confidential information is to make sure that the CSIRO representatives who receive that information are not involved in any patent prosecution, research and development or licensing activities outside the context of the '069 Patent litigation in Texas. In other words, if you want to disclose to Messrs. Healy and Redfern all of the information you receive pursuant to subpoenas issued in the Texas litigation, Messrs. Healy and Redfern must confirm that they will discontinue all related patent prosecution, and licensing work outside the scope of the Texas litigation. This necessarily would mean that neither one can be involved in the on going negotiations with Cisco regarding the disputes arising out of the 1998 Technology License Agreement. On the other hand, CSIRO can designate two other representatives, who are not involved in patent prosecution and licensing work outside the scope of the Texas litigation, to receive Cisco's highly confidential information. And, if CSIRO decides that neither of these options will work, Cisco renews its offer to consider the re-designation of specific documents that you believe you need to disclose to Messrs. Healy and Redfern.

In sum, we are trying to be as reasonable as possible, but Cisco cannot agree to an order that permits a blanket disclosure of its documents to the two CSIRO representatives who are at the center of CSIRO's decision-making with respect to patent prosecution and licensing in the wireless LAN field. Also, based on the fact that the parties' discussions regarding this issue have continued through at least today, we will need to extend the attached July 11 agreement so that the parties can continue to work through the remaining issues or Cisco can file a motion for entry of a protective order. We propose to extend the agreement through next Friday. In other words, Cisco will have until at least August 1 to file a motion for entry of the order, agreed or otherwise.

Please let us know as soon as possible how CSIRO would like to proceed.

Sincerely,

Matthew Yungwirth

cc:     Woody Jameson
        Jeff Lindgren (via email: jlindgren@vbllaw.com)

Declaration of Matthew S. Yungwirth

Exhibit 9

Message                                                                                    Page 1 of 3

## Yungwirth, Matthew S.

**From:**    Furniss, Daniel J. [djfurniss@townsend.com]
**Sent:**    Wednesday, July 30, 2008 12:35 PM
**To:**      Yungwirth, Matthew S.
**Cc:**      Jameson, Woody
**Subject:** RE: CSIRO

Matt,
The issue as to Healy's participation is critical. CSIRO will not, indeed, cannot agree to any provision that prevents him from continuing to be involved in all matters relating to the '069 patent. The position expressed in your July 24th letter is clear but not acceptable. As I mentioned, under the Texas order, neither Redfern nor Healy see any technical information, which was sufficient for all of the other parties. I am in meetings today, but could discuss by phone tomorrow. Our agreement remains in effect, but we have no ability to determine what documents defendants counsel examine Mr. Redfern on.
Let me know if there is a good time for you tomorrow.
Dan

```
Daniel J. Furniss
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
(650) 326-2400 Telephone
(650) 326-2422 Fax
djfurniss@townsend.com
www.townsend.com
Offices in:
Denver | Palo Alto | San Francisco | Seattle | Walnut Creek
This message may contain confidential information. If you are not
the intended recipient and received this in error, any use, or distribution is strictly
prohibited. Please also notify us immediately by return e-mail, and delete this message from
your computer system. Thank you.
```

-----Original Message-----
**From:** Yungwirth, Matthew S. [mailto:MSYungwirth@duanemorris.com]
**Sent:** Wednesday, July 30, 2008 7:51 AM
**To:** Furniss, Daniel J.
**Cc:** Jameson, Woody
**Subject:** RE: CSIRO

Dan:

Thank you for your email.  It is encouraging to see that the parties have been able to resolve most of their disputes regarding the form of the protective order.

With respect to Sec. 5.4, Cisco will agree in the spirit of compromise to revert back to the provisions provided in the Texas order.  That would appear to leave section 4.3 as the only issue in dispute. Unfortunately, I think we may be missing each other on that issue.  Per our July 24th letter (attached), Cisco believes that the new information you provided on July 23rd regarding Mr. Healy's job responsibilities changes the posture of this issue.  As provided in the July 24th letter, Cisco has proposed three alternate resolutions of this issue and each of them is different than what you discuss below.  Cisco's proposed alternatives would impact section 4.3(g) and (h) and the portion of section 4.3 that follows sub-section (h).  To the extent that the July 24th letter does not clearly explain Cisco's position on this issue, please let me know and we can discuss it at your convenience.

Finally, with respect to the Redfern deposition, I do not know at this time what Cisco documents, if any, the Joint Defense Group intends to use at the deposition.  That being said, there are a number of

8/4/2008

Cisco documents related to the Radiata acquisition and the TLA that have not previously been provided to Mr. Redfern or others at CSIRO and that have been designated as "outside counsel's eyes only." Accordingly, Cisco has objected to the disclosure of these documents to Mr. Redfern, among others. However, to the extent that those documents contain information that was provided to Mr. Redfern or CSIRO in some other form, we will have to deal with that issue on a document-by-document basis.

I understand this is a busy week for you, but I think it could be productive for us to talk tomorrow and try to resolve the remaining issue related to section 4.3. Please let me know when you are available for such a call.

Thanks,
Matt

---

**From:** Furniss, Daniel J. [mailto:djfurniss@townsend.com]
**Sent:** Tuesday, July 29, 2008 7:20 PM
**To:** Yungwirth, Matthew S.
**Cc:** Jameson, Woody
**Subject:** RE: CSIRO

Matt,
There are very few differences between your proposed order and the Texas order. However, as I mentioned, Terry Healy is involved in ongoing proceedings in Japan, some of which could be viewed as patent prosecution. Accordingly, we cannot agree to your section 4.3 (h). As I previously noted, the solution to this in Texas is that neither Healy nor Redfern are allowed to see or hear of AEO technical documents, which effectively solves the patent prosecution issue. Second, the provisions of 5.4 are also out of step with the Texas procedure and not acceptable. I frankly do not understand the language regarding documents not attached to deposition transcripts. Moreover, this would cause havoc as it would make reading the deposition difficult. We have simply been sealing those portions of depositions including any documents per the terms of the Texas order.
I believe these are the only remaining sticking points, although the insistence on a separate order delayed things while we compared the Texas order with your draft, and with my client's comments.
With regard to Redfern, you are aware of his upcoming deposition. Moreover, as he was involved in the discussion leading up to both the TLA and the later agreements with Cisco, I am unclear as to what would be confidential as to him.
Let me know your thoughts. I am available to discuss on Thursday, if you wish.
Dan

Daniel J. Furniss
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
(650) 326-2400 Telephone
(650) 326-2422 Fax
djfurniss@townsend.com
www.townsend.com
Offices in:
Denver | Palo Alto | San Francisco | Seattle | Walnut Creek
This message may contain confidential information. If you are not the intended recipient and received this in error, any use, or distribution is strictly prohibited. Please also notify us immediately by return e-mail, and delete this message from your computer system. Thank you.

in the TLA and Cisco negotiations, I am not sure what the issue is. However, we would like to wrap this up as well. Let me know your thoughts. This is a very busy week here. I am available to discuss on Thursday, but not much tomorrow.
Dan

-----Original Message-----
**From:** Yungwirth, Matthew S. [mailto:MSYungwirth@duanemorris.com]

**Sent:** Tuesday, July 29, 2008 1:11 PM
**To:** Furniss, Daniel J;
**Cc:** Jameson, Woody
**Subject:** RE: CSIRO

Dan:

We am sorry you could not participate in the call with John and Rob yesterday.  If you have a chance to talk today, we would like to move the confidentiality discussion forward.  We understand that Dennis Redfern is being deposed next week and we suspect that the TLA (and Cisco's and CSIRO's discussions related thereto) may be intended topics of discussion.  With that in mind, we would like to be in a position to have the confidentiality issue resolved or to file a motion, if need be, before the deposition.

Thanks, Matt

Matthew Yungwirth
Duane Morris LLP
1180 West Peachtree St., Suite 700
Atlanta, GA 30309
(t) 404.253.6935
(f) 404.759.2353

> **From:** Furniss, Daniel J. [mailto:djfurniss@townsend.com]
> **Sent:** Friday, July 25, 2008 1:01 AM
> **To:** Yungwirth, Matthew S.
> **Subject:** CSIRO
>
> Matt,
> I will call you tomorrow but I agree to an extension of a week. I will not send the documents to my clients until we have a resolution, one way or the other.

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.